**Christian J. CAMENISCH, II, et al., Appellants,**

v.

**UNITED STATES of America et al.**

**No. 74–1904.**

United States Court of Appeals, District of Columbia Circuit.

Oct. 7, 1976.

Rehearing Denied Aug. 18, 1976.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

ORDER

The suggestion of appellants Camenisch, et al. for rehearing *en banc* having been transmitted to the full Court and there not being a majority of the Judges in regular active service in favor of having this case reheard *en banc*, it is

ORDERED by the Court *en banc* that the aforesaid suggestion for rehearing *en banc* is denied.

Chief Judge BAZELON would grant appellants' suggestion for rehearing *en banc*.

## ORDER AMENDING ORDER DENYING SUGGESTION FOR REHEARING EN BANC

It appearing that the original order entered herein on August 18, 1976 which denied appellants' suggestion for rehearing *en banc* did not reflect the fact that Chief Judge Bazelon was issuing a statement as to the reasons why he would have granted rehearing *en banc*, it is

ORDERED by the Court *sua sponte* that the order of this Court entered on August 18, 1976, denying appellants' suggestion for rehearing *en banc* is amended to include a statement by Chief Judge Bazelon, which statement is attached to this order. In all other respects the order of August 18, 1976, is unchanged.

## STATEMENT OF CHIEF JUDGE BAZELON AS TO WHY HE WOULD GRANT REHEARING EN BANC

The administration of criminal justice in the District of Columbia is profoundly implicated in this case, which challenges practices in the Superior Court for the payment of fees to court-appointed counsel. Plaintiffs allege facts which, if substantiated, suggest that indigent defendants are not likely to receive adequate representation because their appointed counsel cannot expect to receive adequate compensation. This case thus carries profound implications not only for the propriety interests of plaintiff attorneys, but also for the right of

criminal defendants to effective assistance of counsel.[1]

Despite its importance, plaintiffs' complaint was dismissed in the district court without opinion. Afterwards, a panel of this court affirmed that dismissal under local Rule 8(f), which allows cases to be disposed of by memorandum opinions that are not published. I would grant rehearing en banc to reconsider the panel's affirmance for the persuasive reasons set forth in Judge McMillan's dissenting memorandum opinion, which is appended along with the panel majority's memorandum.[2] I write this statement to bring the important issues of this case into public view.[3]

## APPENDIX

Before McGOWAN, and LEVENTHAL, Circuit Judges and McMILLAN,* United States District Judge for the Western District of North Carolina.

## MEMORANDUM

Plaintiffs, on behalf of themselves and approximately nine hundred other attorneys similarly situated, filed a complaint in the District Court against the United States and the judges of the Superior Court of the District of Columbia, alleging that reduc-

tions in the amounts of their claimed compensation under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A (1970), constitute a breach of contract and violate the Fifth Amendment. All defendants moved to dismiss for lack of jurisdiction and failure to state a claim; and the court, without opinion, ordered dismissal.

The Criminal Justice Act provides that attorneys appointed under the Act to represent indigent criminal defendants shall recover their expenses and

> . . . *shall* . . . *be compensated* at a rate not exceeding $30 per hour for time expended in court or before a United States magistrate and $20 per hour for time reasonably expended out of court, or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district. . . . (Emphasis added.)

> \*   \*   \*   \*   \*   \*

> [T]he court shall fix the compensation and reimbursement to be paid to the attorney . . . .

18 U.S.C. § 3006A (1970). Plaintiffs provided representation under the Act by appointment between February 1, 1971 and Octo-

---

1. *See United States v. DeCoster,* 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973).

2. I note that the panel's ground of affirmance does not forever foreclose plaintiffs' claims in federal court. "Since the local courts are in the early stages of administering a new statute [District of Columbia Criminal Justice Act, 18 U.S.C. § 3006A (West Supp.1976)] designed for their use alone, *this is hardly the time* for a federal court to prescribe by injunction or declaratory judgment precisely how that act should be either interpreted or administered." Memorandum, *infra* at 1274 (emphasis added). I trust that the considerations of comity persuading the court not to exercise its equitable powers at this time will not be found to outweigh the substantial interests of counsel and indigent defendants beyond the period reasonably required for the local courts to bring the administration of the Criminal Justice Act into line with the mandates of due process.

   Although the panel states in dicta that "it seems unlikely that there is any statutory or constitutional bar to determination of attorney's fees by a judge other than the one trying

the case," Memorandum, *infra* at 1274 n. 1, this statement does not foreclose plaintiffs' due process claims. Plaintiffs contend that there must be some rational basis for the cutting of their vouchers and that rationality would be promoted by requiring the judge who heard the case also to rule on the attorney's voucher. Because rationality might also be promoted by requiring the judge who heard the case to describe the attorney's performance in writing so that another judge might have some sensible basis for disposing of the voucher, *see United States v. Thompson,* 361 F.Supp. 879, 884 (D.D. C.1973), I agree with the panel that due process does not require one method over another. I read the panel's statement to say no more than this.

3. *See* Leventhal, *Appellate Procedures: Design, Patchwork, and Managed Flexibility,* 23 U.C.L. A.L.Rev. 432, 439 (1976).

\* Sitting by designation pursuant to 28 U.S.C. § 292(d).

ber 4, 1973—the date of the complaint. They allege that the established practice, custom, and usage in the Superior Court with respect to Criminal Justice Act claims is to compensate attorneys at the rate of twenty ($20.00) per hour for out of court time and thirty ($30.00) per hour for in-court time, and that these rates are substantially less than the prevailing rates charged by members of the District of Columbia bar for similar services to non-indigent clients. It is further alleged that in cases disposed of before trial compensation claims are processed by the "Judge in Chambers," an assignment rotated among the various judges. Given the rotation system, there is said to be no assurance that the judge passing on the compensation claim will have had prior contact with the case. The complaint also alleges that the plaintiffs' CJA claims have recently been drastically reduced, and that these reductions were accomplished in an arbitrary and capricious manner, without notice, opportunity for hearing, or the statement of reasons for the reduction.

Plaintiffs seek money damages against the United States in the amount of the difference between filed claims based on the maximum rates and the claims actually allowed. With respect to the defendant judges, they seek prospective relief by way of declaratory judgment and injunction. In the case of the claim for damages, plaintiffs asserted jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2) (1970), which gives the district courts concurrent jurisdiction with the Court of Claims over

> "Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, *or upon any express or implied contract with the United States*, or for liquidated or unliquidated damages in cases not sounding in tort." (Emphasis supplied).

It is clear from the complaint that plaintiffs have no legal claim against the United States for sums in excess of the amounts actually authorized by the judges of the Superior Court. The Criminal Justice Act is not self-executing; payment can be made only after a judge has determined the appropriate fee. 18 U.S.C. § 3006A(d)(4) (1970). The role played by the Administrative Office of the United States Courts within this statutory framework is actually quite limited; it is to disburse funds pursuant to an authorized voucher, and it has no authority to make further payments once the approved amount has been paid. *See id.* § 3006A(j). To the extent that the complaint seeks money damages in excess of the amounts actually approved by Superior Court judges and subsequently paid by the Administrative Office, there is no claim against the United States within the meaning of the Tucker Act, and consequently no jurisdiction under 28 U.S.C. § 1346(a)(2).

With respect to the claim for declaratory and injunctive relief, the defendant Superior Court judges, not having answered the complaint by reason of the motion to dismiss, have not in the present state of the record denied that these claims are reduced by judges who are unacquainted with the details of the representation involved, that the reductions are accomplished without providing attorneys with a hearing on the issue, and that no reasons are given for the reductions. Standing alone, these allegations raise procedural due process issues, but we have concluded that it would be inappropriate at this time for a federal court to grant the requested relief.

The complaint speaks as of a time when the federal Criminal Justice Act was applicable to the local District of Columbia courts, and federal monies were appropriated for payment of vouchers approved by Superior Court judges. Apparently recognizing the numerous difficulties that the local District of Columbia Government experienced in implementing the federal Criminal Justice Act, including most especially the inadequacy of the funds provided to meet the claims filed, Congress has, since the judgment under review was entered, enacted a separate and independent "District of Columbia Criminal Justice Act" for

the local courts as part of the District of Columbia Code, with appropriations to be made directly to the District Government. Pub.L. No. 93–412, §§ 2–3, 88 Stat. 1089, see D.C.Code §§ 11–2601 to 11–2609.

The responsibility for the development and implementation of a plan to provide representation under the new statute falls to the Joint Committee on Judicial Administration of the local D.C. courts. That Committee consists of (1) the Chief Judge of the District of Columbia Court of Appeals, who serves as Chairman, (2) an associate judge of that court elected annually by the judges thereof, (3) the Chief Judge of the Superior Court and (4) two associate judges of that court elected annually by the judges thereof. D.C.Code § 11–1701(a).

Since the local courts are in the early stages of administering a new statute designed for their use alone, this is hardly the time for a federal court to prescribe by injunction or declaratory judgment precisely how that act should be either interpreted or administered. The decision to issue a declaratory judgment or to enter an injunction is a matter of judicial discretion, e. g., *Zemel v. Rusk,* 381 U.S. 1, 19, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) (declaratory judgment); *Meredith v. City of Winter Haven,* 320 U.S. 228, 235, 64 S.Ct. 7, 88 L.Ed. 9 (1943) (injunction), and in our view a sound exercise of that discretion by the District Court would mandate denial by it of the requested relief. Under these circumstances, we leave the judgment appealed from undisturbed.[1]

McMILLAN, District Judge (dissenting):

The decision appealed from is a one-sentence order, without opinion, dismissing the complaint. No evidence was taken in the trial court. The only facts before us are those alleged in the complaint.

The decision ought to be based on those facts, giving the pleader at least some of the inferences in his favor.

1. Although this disposition renders it unnecessary for us to pursue the matter further, it seems unlikely that there is any statutory or constitutional bar to determination of attorney's fees by a judge other than the one trying

I fear the majority opinion ignores or discounts the facts, and relies on some comfortable assumptions based on considerations outside the record and contrary to reality.

I dissent.

### THE FACTS

Plaintiffs are lawyers who practice in the criminal Superior Courts of the District of Columbia and who between February 1, 1971, and October 4, 1973, represented and may thereafter represent indigent criminal defendants, by appointment of the Superior Court judges of the District of Columbia under the Criminal Justice Act, 18 U.S.C. § 3006A. Congress by that Act established a program and policy to provide representation for indigents charged with criminal offenses, and to provide compensation to the lawyers who represent them. Defendant Greene, Chief Judge of the Superior Court, supervises the program and the other defendants, associate judges, help run it. Plaintiffs sued on behalf of themselves and about nine hundred other lawyers similarly situated.

The Act (18 U.S.C. § 3006A(d)) provides that lawyers appointed under the Act shall recover their expenses and

" . . . *shall . . . be compensated* at a rate not exceeding $30 per hour for time expended in court or before a United States magistrate and $20 per hour for time reasonably expended out of court, or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district. . . ." (Emphasis added.)

\* \* \* \* \* \*

"[T]he court shall fix the compensation and reimbursement to be paid to the attorney . . . ."

the case (i. e., by the chief judge, a judge assigned administrative duties, or by rotation). In any event, such determination is one that, albeit of an ancillary nature, would seem to be subject to legal challenge only on direct review.

The maximum fee allowable in misdemeanor cases is $400, and the maximum allowable in felony cases is $1,000.

It is established practice, custom and usage that the rate for attorneys appointed under the Act is $20 an hour for out of court time and $30 an hour for in-court time.

These rates are substantially less than the prevailing rate charged by members of the District of Columbia bar for similar services to non-indigent clients.

Each of the plaintiffs was appointed by a Superior Court judge to represent a criminal defendant pursuant to the Act. Each submitted a claim for compensation. Each claim was drastically reduced, and paid in the reduced amount. No notice of nor reason for the reduction was given. No opportunity for a hearing on the reduction was given.

The reductions in the eight particular cases alleged in the complaint were:

| Plaintiff | Claimed | Allowed |
| --- | --- | --- |
| Camenisch | $220.00 | $ 45.00 |
| Master | 363.96 | 150.00 |
| Sansing | 282.10 | 60.00 |
| Lerman | 177.50 | 100.00 |
| Liotta | 101.00 | 65.00 |
| Bowers | 175.00 | 20.00 |
| Gregory | 145.00 | 60.00 |
| Gregory | 890.00 | 590.00 |

Under procedures established by defendant Greene, fee claims on cases disposed of before trial (by motion, dismissal, *nol pros,* etc.) are processed by a judge in chambers, though not always by the same judge. The chambers fee-fixing assignment is rotated among various judges.

The judges who thus sit in chambers pass on a large number of claims for fees in cases with the majority of which they have had no contact until called upon to review the fees claims under the Act.

As a result, the decisions of those judges are made without adequate knowledge and are necessarily arbitrary.

Defendant Greene has failed to set up regulations to change these practices, to provide notice and hearing, and to establish a uniform administration of compensation under the Act.

The practice complained of continues.

It undermines the purpose of the Act by placing an economic barrier in front of lawyers performing services under the Act.

It deprives indigent defendants of adequately compensated counsel who are economically able to provide thorough representation.

The injury is alleged to be irreparable and the remedy at law inadequate.

Based on the above facts, plaintiffs say that the fee-cutting actions of defendants (a) constitute a breach of contract and violate the Act; (b) are arbitrary and capricious and thus violate the Fifth Amendment; (c) violate the due process clause of the Fifth Amendment by taking property without notice and opportunity for hearing.

They seek money damages from the United States, a declaration of their rights, and equitable relief against the judges to change the way fees are set.

## JURISDICTION

The Tucker Act, 28 U.S.C. § 1346(a)(2), provides jurisdiction over

"Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

Plaintiffs meet the "not exceeding $10,000" requirement; they have not yet lost and may never lose $10,000. They have rights to compensation under an "Act of Congress," because 18 U.S.C. § 3006A(d) provides that appointed lawyers "shall . . . be compensated . . . ." However, they had no express contracts with the United States for agreed sums of money; § 3006A(d) is not self-executing; it depends

on a judge to determine a dollar amount for the fee; it depends on the Administrative Office to pay the approved amount under § 3006A(j); and when the approved amount is paid, the Administrative Office has no more authority to make any further payment. The Tucker Act is therefore a basis for jurisdiction, but the complaint fails to state a claim against the United States. The claim for money damages against the United States was correctly dismissed.

Against the judges there is jurisdiction for equitable relief under 28 U.S.C. § 1331. The $10,000 minimum amount in controversy requirement is satisfied because, in time, if continued, the extreme fee cuts described in the complaint could well deprive a lawyer who accepted such appointments of more than $10,000, *Horton v. Liberty Mutual Insurance Company,* 367 U.S. 348, 353, 81 S.Ct. 79, 5 L.Ed.2d 46 (1960); *Mississippi and Missouri Railroad v. Ward,* 67 U.S. [2 Black] 485, 492, 17 L.Ed. 311 (1862); *see United States Service Men's Fund v. Eastland,* 159 U.S.App.D.C. 352, 488 F.2d 1252, 1260–61 (1973), *rev'd on other grounds,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). The complaint alleges violations of the due process and equal protection guaranties of the Fifth Amendment, and the suit therefore "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331(a).

No previous exhaustion of remedies by seeking extraordinary relief in the District of Columbia Court of Appeals should be required. Plaintiffs are not parties to actions pending in Superior Court; there is no recognized avenue of appeal from what happened to them; they are lawyers wronged by an *administrative* ruling under a particular statute—*not* litigants in a Superior Court trial. The District of Columbia Court of Appeals had no statutory jurisdiction over these fee matters; that duty at that time rested on the Superior Court for the District of Columbia under 18 U.S.C. § 3006A. When that court acted unconstitutionally in administrative matters, plaintiffs went to a proper court to assert their constitutional rights, and are rightfully here on appeal.

## THE RIGHT VIOLATED

Plaintiffs, however troublesome their contract claim against the United States, had a property right—a reasonable expectation of compensation.

This expectation rests on two footings.

First, § 3006A says that court-appointed counsel " . . . *shall* . . . *be compensated* . . . " at rates not exceeding the $30 per hour and $20 per hour maximums. This legislative command to compensate appointed lawyers rebuts the notion that such appointed lawyers are merely faithful court lackeys, fortunate to get crumbs from a generous court. It expresses a policy of Congress to pay professional advocates for a service which the public requires and criminal defendants need.

Second, the undisputed facts before this court (App. P. 13) are that:

"It is the established practice, custom and usage that the rate for attorneys appointed under the Act is $20.00 an hour for out-of-court time and $30.00 an hour for in-court time."

In this setting, it is clear that plaintiffs had a reasonable expectation of compensation in an amount within striking distance at least of the "established practice, custom and usage," and that they were entitled to due process protections before that expectation was destroyed. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Their rights were thus violated when, in wholesale fashion, their low but reasonably anticipated fees were slashed to minor fractions of sums claimed, without notice of the proposed cuts and without hearing or opportunity to be heard, by judges uninformed about the cases, the services, the quality and performance of the lawyers, or the results obtained.

## THE ILLUSORY DEFENSES

Much of the time in oral argument of the appeal was taken up by assertions and questions foreign to the facts and the issues they raise.

For example, it was suggested or implied that arbitrary fee fixing is justified by a shortage of money to pay fees; that lawyers are often called on to do free work and therefore should not complain of sharp fee cuts or no fees at all; that ad hoc reasons may exist for some of the reductions· that taking time for informed and rational rather than uninformed and arbitrary fee decisions would over-burden the trial courts; that somewhere, somehow, there must exist a better world in the lower court or in the administrative area, where plaintiffs could conceivably get their constitutional claims recognized; that a new statute, the District of Columbia Criminal Justice Act of September 3, 1974, has somehow worked a change in the situation (or may do so); and that the court, therefore, should do nothing about the unconstitutional practices complained of.

The trouble with those contentions is that (except for the judicial notice which the court is entitled to take of any Act of Congress) they are not before this court; there is not a shred of evidence to support them; they are illusory defenses.

In the vernacular of Mr. Micawber, they simply ask the court to stay its hand because "something will turn up."

Moreover, the only document cited on behalf of these defenses during the argument strongly *supports* the position of the plaintiffs. That document, *not* a part of the record, is the April, 1975, "Report on Criminal Defense Studies in the District of Columbia by the Joint Committee of the Judicial Conference of the District of Columbia Circuit and the District of Columbia Bar (unified)." On August 6, 1975, that report was presented to the Judicial Conference of the District of Columbia Circuit, which

> "receives the report . . . with thanks but takes no position with respect thereto."

That report (pages 33–55) indicates that fee approvals are still handled in essentially the same way described in the complaint in this case—and with the same adverse effects on the constitutional rights of the lawyers and on the quality and availability of defense services. The report makes some recommendations for improvement, but there is no word on what has happened to those recommendations. Lawyers' recommendations, not adopted by judges, are hardly a substitute for judicial decision.

## CONCLUSION

The case is here because judges acted in haste and without information instead of on facts learned through due process procedures.

This court will not help the cause of law and order if it substitutes hope and assumptions for haste and a lack of information.

This court is neither intended nor equipped to discover and evaluate the facts on which decision of this case on its true merits should be made. That is the job of the trial court.

The evidence should be heard, the facts found, and the issues decided on their merits by a trial judge.

The case should be remanded for consideration on its merits.