W. Edward THOMPSON et al., Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 13280.

District of Columbia Court of Appeals.

Argued Jan. 25, 1979.

Decided Oct. 26, 1979.

---

Kenneth Sheppard, for appellants.

Edward P. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed and the case was argued, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for appellee.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

■ In a suit for damages, the appellants, members of the District of Columbia Bar, unsuccessfully challenged the administration in the trial court of the District of Columbia Criminal Justice Act. D.C.Code 1978 Supp., §§ 11–2601–2609. They assert on appeal that the court erred in granting appellee District of Columbia's motion for summary judgment because the prevailing practice of cutting Criminal Justice Act payment vouchers without notice or hearing constitutes a breach of contract and violates the due process clause of the Fifth Amendment.[1] We affirm.[2]

---

1. Appellants also argue that the court erred in refusing leave to amend the complaint to add as defendants the individual judges of the Superior Court. In view of our disposition of this case, we do not reach this issue. *See* note 8 *infra.*

2. The only mention in the trial court of the constitutional claim was in a statement of issues filed by appellants in response to appellee's motion for summary judgment. Appellants' cross motion for summary judgment, filed 10 days after their statement of issues, contained no mention of the due process issue, and the trial court's opinion also made no men-

tion of the due process claim now asserted. It is established that we may decline to review constitutional issues raised for the first time on appeal. *Valentine v. United States,* D.C.App., 394 A.2d 1374 (1978); *Robinson v. United States,* D.C.App., 322 A.2d 271 (1974); *In re W. E. P.,* D.C.App., 318 A.2d 286 (1974); *Foster v. United States,* D.C.App., 290 A.2d 176 (1972); *Williams v. United States,* D.C.App., 237 A.2d 539 (1968). We decline to reach these constitutional claims in this case. *See Sparks v. Parker,* 368 So.2d 528 (Ala.1979), *appeal dismissed,* —— U.S. ——, 100 S.Ct. 22, 62 L.Ed.2d 16 (1979).

## I

The District of Columbia Criminal Justice Act, *supra* [hereinafter CJA or Act],[3] provides that lawyers appointed under its provisions shall be compensated at the maximum rate of $30 an hour for in-court representation of an indigent defendant and $20 an hour for out-of-court legal work. The judges of the Superior Court administer the Act and determine the amount of compensation each appointee will receive.

The underlying purpose of the CJA is ". . . to insure that persons charged with crimes in the District of Columbia, who are financially unable to obtain an adequate defense . . . are provided with legal representation. . . ." H.R. Rep.No.93–1172, 93rd Cong., 2d Sess. 7 (1974). The Act mandates that the Joint Committee on Judicial Administration prepare and place in operation a plan to facilitate its purposes.[4] Each appellant was appointed to represent a criminal defendant pursuant to the Act and each submitted to the trial court a claim for payment based on the maximum rate specified in the Act. All claims for payment were reduced, without notice, to an hourly rate substantially below the statutory maximum.

Appellants alleged in their complaint that the established practice and custom of the Superior Court with respect to CJA claims is to compensate attorneys at a rate below the maximum permitted under the Act, and that these rates are substantially less than the prevailing rates charged by members of the District of Columbia Bar for similar services to non-indigent clients. They further alleged that in cases disposed of before trial, compensation claims are processed by the "Judge in Chambers," an assignment rotated among Superior Court judges, a system which provides no assurance that the judge passing on the compensation claim will have had prior contact with the case. Appellants sought money damages against the District of Columbia in the amount of the difference between the filed claims based on the maximum amounts and the claims actually allowed by the judges.

The District of Columbia moved to dismiss the complaint under Super.Ct.Civ.R. 12(b)(6), contending that a CJA appointment did not constitute a contractual relationship between the parties, that the judges of the Superior Court were not acting as agents of the District of Columbia when they reduced the compensation claimed by the appointees, and that even if the judges were agents of the District, the immunity enjoyed by the judges in the exercise of judicial, discretionary functions was imputed to the District of Columbia and precluded the latter's liability under the doctrine of respondeat superior. After a hearing on the motion to dismiss, which was treated as a motion for summary judgment pursuant to Super.Ct.Civ.R. 12(c), appellants moved for a continuance to take depositions. The court did not rule on this motion since appellants simultaneously filed a cross motion for summary judgment. The court later issued a memorandum decision granting judgment for appellee.

## II

Superior Ct.Civ.R. 56(c) provides that judgment shall be summarily granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Basch v. George Washington University,* D.C.App., 370 A.2d 1364, 1366 (1977). In reviewing rulings on such motions, "our function is to determine whether any issue of fact pertinent to the ruling exists . . ." *Owens v. Tiber Island Condominium Association,* D.C.App., 373 A.2d 890, 894 (1977). In performing this function here, we conclude that the trial court correctly ruled

---

**3.** The CJA of the District of Columbia is modeled after the United States CJA, 18 U.S.C. § 3006A (1970).

**4.** D.C.Code 1978 Supp., § 11–2601. Such a plan has been promulgated by the Joint Committee. *See* "Plan for Furnishing Representation to Indigents under the Criminal Justice Act," effective November 29, 1974.

that appellee was entitled to judgment as a matter of law.

Resolution of this appeal rests on the legal interpretation of the CJA appointment form and voucher. The appointment form, from which the appellants and appellee draw different legal conclusions, states:

### CLAIM FOR SERVICES AND EXPENSES

For services and expenses incurred in connection with the above case, attorney/payee may be compensated if all appropriate spaces on this form are completed and submitted for payment within 60 calendar days after termination of attorney/payee's representation. Before any payments may be made, the claim will first be reviewed both for reasonableness and compliance with applicable regulations.

Time: Report all time in actual hours and minutes.

In Open Court: Limited to time spent in court during hearing of the case, motion or other proceeding.

Waiting Time: Time necessarily spent waiting for a proceeding in the case while physically present in the courtroom. Waiting time is compensated at the out of court rates.

Travel Time: This is compensable during normal business hours, but travel time to and from court cannot be claimed if the round trip took less than one hour. Travel must be from attorney/payee's office with the sole purpose of discharging attorney/payee's duty in the case. If private automobile is used, the prescribed rate per mile plus parking is allowable.

Itemized Expenses: Itemize any out-of-pocket expenses incurred incidental to the representation. Do not include such things as office overhead, rent, telephone, secretarial help or printing of briefs. Xeroxing costs and expenses related to duplicating typewritten briefs are allowable.

A "Rate Schedule," broken down into dollars and cents per minute in court and out of court, is provided in the CJA form and defines the maximum amounts payable under the CJA representation plan to an appointee. See D.C.Code 1978 Supp., § 11–2604(a), adopting the figures set by 18 U.S.C. § 3006A(d)(1) (1970) (maximum of $30 per hour in-court time, $20 per hour out-of-court time).

■ Appellants contend that appointments to represent indigent defendants are offers of employment by the Superior Court judges, acting as agents of the District of Columbia, and that acceptance by counsel of such appointments creates a contractual relationship whereby the District of Columbia is obligated to provide compensation at the maximum hourly rate stated in the Act.

A careful reading of D.C.Code 1978 Supp., §§ 11–2601–2609, compels the conclusion that the Act was never intended to establish a contractual system with counsel. The language of the CJA form provides nothing more than instructions for attorneys about the manner for claiming legislatively authorized compensation. Although the Act allows counsel to claim compensation for time at the maximum rates permitted, there is no language in the form that obligates trial judges to approve those maximum rates. The fact that the Act is written in terms of maximums and does not establish a specific rate of compensation, thereby allowing judicial discretion in determining a claim, reinforces the view that the voucher was never intended to memorialize a contractual relationship, but is merely a mechanism for effecting payment to attorneys providing legal representation under the Act. The District of Columbia Code provides that counsel shall submit a "claim for compensation" in the form provided by statute and then "[t]he court shall fix the compensation and reimbursement to be paid to the attorney." D.C.Code 1978 Supp., § 11–2604(d).[5]

5. Cases construing the parallel federal enactment, 18 U.S.C. § 3006A (1970), also lend credence to the conclusion that CJA vouchers do no more than facilitate payment for representation of indigent defendants, representation that was traditionally considered pro bono work.

In *Camenisch v. United States,* 180 U.S. App.D.C. 95, 97, 553 F.2d 1271, 1273 (1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1104, 51 L.Ed.2d 538 (1977),[6] (a case construing 18 U.S.C. § 3006A(d)(4), which is identical to D.C.Code 1978 Supp., § 11–2604(d)) the court, in the following language, held that there was no such express or implied contract with the United States:

> [P]laintiffs have no legal claim against the United States for sums in excess of the amounts actually authorized by the judges of the Superior Court. The Criminal Justice Act is not self-executing; payment can be made only after a judge has determined the appropriate fee. 18 U.S.C. § 3006A(d)(4) (1970). The role played by the Administrative Office of the United States Courts within this statutory framework is actually quite limited; it is to disburse funds pursuant to an authorized voucher, and it has no authority to make further payments once the approved amount has been paid. *See id.* § 3006A(j). To the extent that the complaint seeks money damages in excess of the amounts actually approved by Superior Court judges and subsequently paid by the Administrative Office, there is no claim against the United States . . . [*Id.* 180 U.S.App.D.C. at 97, 553 F.2d at 1273.] [7]

That reasoning is applicable here.

Since appellants' appointments under the Criminal Justice Act memorialized by the appointment forms and vouchers were not, as a matter of law, contracts between ap-

pellants and appellee, the denial of appellants' motion for summary judgment by the trial court and the grant of that of the appellee were correct.[8]

■ Notwithstanding our affirmance of the trial court's ruling on the absence of a contractual relationship in CJA cases, we conclude by noting that it unquestionably is the intention of the Act that attorneys appointed thereunder be reasonably and fairly compensated. Thus, D.C.Code 1978 Supp., § 11–2604(a), provides:

> Any attorney appointed pursuant to this chapter shall, at the conclusion of the representation or any segment thereof, be compensated at a rate fixed by the Joint Committee on Judicial Administration, not to exceed the hourly scale established by the provisions of section 3006A(d)(1) of title 18, United States Code. Such attorney shall be reimbursed for expenses reasonably incurred.

It is true, as we have noted, that "[t]he court shall fix the compensation and reimbursement to be paid to the attorney." D.C.Code 1978 Supp., § 11–2604(d). In exercising their discretion in fixing an attorney's "compensation and reimbursement" pursuant to the submission of a CJA voucher, judges should bear in mind the mandatory language of § 11–2604(a), and a reduction in the amount represented by an attorney as being properly due should only be made on an informed and rational basis.

*Affirmed.*

---

See *United States v. Dillon,* 346 F.2d 633 (9th Cir. 1965), *cert. denied,* 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966). This was also the view taken in *United States v. Hanrahan,* 260 F.Supp. 728 (D.D.C.1966). There the court stated that "the purpose of [the Act] is 'to assure representation of the indigent on a basis which would alleviate the burden on individual lawyers,' but the Act is not intended 'wholly to eliminate the burden by paying fees regularly charged to nonindigent clients.' " *Id.* at 729 (quoting *United States v. Moore,* 258 F.Supp. 790, 791 (D.D.C.1966)).

**6.** The opinion was not published pursuant to D.C.Cir.R. 13(c). However, then Chief Judge Bazelon appended the previously unreported opinion to his statement of reasons why he

would grant appellant's suggestion for rehearing en banc.

**7.** Even though the dissent was on other grounds, the dissenting judge rejected the contract claims with similar reasoning. *Camenisch v. United States, supra* 180 U.S.App.D.C. at 99–100, 553 F.2d at 1275–76.

**8.** In light of this conclusion, there is no need to decide whether the judges of the Superior Court are agents of the District of Columbia when they fix the rate of compensation under the Act, or whether the fixing of the rate of compensation is a judicial act for which the judges possess absolute immunity from damage actions.