## The HOLLADAY CORPORATION, Appellant,

v.

## Matthew TURKIN and Elizabeth O'Sullivan, Appellees.

### No. 80–1221.

District of Columbia Court of Appeals.

Argued Dec. 9, 1981.

Decided March 31, 1982.

Philip M. Musolino, Washington, D. C., with whom Kenneth J. Loewinger, Washington, D. C., was on the brief, for appellant.

Andrew F. Martin, Washington, D. C., for appellees.

Before KELLY, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

This case stems from a suit filed by appellant, Holladay Corporation (hereinafter

"owner"), in the Landlord and Tenant Branch of the Superior Court to gain possession of an apartment building. The action resulted in a settlement agreement between the owner and the Tenant Association which provided that the tenants would vacate their respective apartments by a specified date and that the owner would pay each tenant a sum certain once possession of the apartment was regained. At the time of the settlement agreement, appellees were not signatory lease tenants but occupied the two apartments by leave of those tenants. Appellees were members of the Tenants Association. They vacated their apartment prior to the date specified in the agreement and requested the payment. Their request was denied. Appellees brought suit in the Civil Division alleging breach of contract, and subsequently filed a motion for summary judgment. The trial court granted the motion and ordered the owner to pay each appellee $2,998.47 plus interest and costs. This appeal followed. We hold that there is a genuine issue of material fact. Accordingly, we reverse and remand for further proceedings.

On June 21, 1978, all tenants in the apartment building were served with a 180-day notice to quit and vacate pursuant to § 501(b)(5)(D) of the District of Columbia Rental Housing Act of 1977 (D.C.Law 2–54).[1] The notices terminated the tenancies effective December 31. At the time the notices were received, Mr. D. Giovannuchi and Mr. H. Segal were signatory lease tenants.

On June 27, appellee Elizabeth O'Sullivan assumed occupancy of apartment 210 from Giovannuchi, although she did not sign a written lease with the owner. The record reflects that O'Sullivan occupied the apartment pursuant to an oral agreement with Giovannuchi, to whom she paid her monthly rent. Giovannuchi then paid the rent. However, O'Sullivan states in an affidavit that her possession of the apartment was known to the owner because she personally requested of its agent that repairs be made on the premises, and that the repairs were made. In December, appellee Matthew Turkin assumed occupancy of apartment 227 from Segal. Turkin stated in his affidavit that he paid his monthly rent in his own name in the form of money orders, and that the owner accepted the payments.

The suit for possession of all the apartments was filed on January 3, 1979. For apartments 210 and 227 Giovannuchi and Segal were named as the respective defendants, and appellees quickly filed motions to intervene. Pursuant to a praecipe filed January 24, the owner and all tenants named as defendants established an escrow account in an area bank for the deposit of all rents. The praecipe stated that the tenants were to commence paying their rent into that account on January 26, at which time about one quarter of the rent for January was due. On that date, Giovannuchi and Segal were still named as defendants, so appellees voluntarily paid that amount of their January rent into the account pending a decision on their motions to intervene. Appellees' rents for February and March were similarly deposited. On March 13, appellees filed notices with the

1. Section 501(b)(5)(D) (Evictions) states:

(b) No tenant shall be evicted from a rental unit, notwithstanding the expiration of his or her lease or rental agreement, so long as he or she continues to pay the rent to which the landlord is entitled for such rental unit unless:

(5) The landlord seeks in good faith to recover possession of the rental unit:

(D) for the immediate purpose of discontinuing the housing use and occupancy of such rental unit: PROVIDED, That prior to recovering possession from the tenant(s), the landlord shall file, with the Rent Administra-

tor, a fully executed affidavit setting forth the following:

(1) that the landlord will not cause the rental unit or the housing accommodation, whichever is applicable, to be substantially rehabilitated;

(2) that the landlord will not place the rental unit or the housing accommodation, whichever is applicable, into use and occupancy as a rental accommodation for a continuous twelve (12) month period beginning from the date that such use is discontinued pursuant to this section.

court regarding their three voluntary payments.

The record is void of any information regarding Giovannuchi's and Segal's involvement in the escrow account. Furthermore, although Turkin assumed occupancy on December 10 and claims that he paid his rent with money orders which the owner "accepted," the record does not provide any specific evidence regarding how and to whom he paid his rent for the period from December 10 to January 26. The record also fails to explain why Turkin's partial January rent was still due and owing on January 26. Therefore, it is unclear whether Turkin paid any rent prior to his voluntary payments into the escrow account. The praecipe of January 24 further stated that the tenants' counsel would provide the owner's counsel and the court with a list of all tenants who did not meet the required payment by the 9th day of each month. The record does not reflect any such notification. Therefore, it is not established that the owner knew that appellees were paying in Giovannuchi's and Segal's stead prior to appellees' March 13 notice to the court.[2]

On April 24, 1979, the owner and the Tenants Association entered into a settlement agreement. The parties agreed, *inter alia*, that the tenants would vacate their apartments by June 30. The final paragraph of the settlement agreement states: "This Agreement shall be binding upon and inure to the benefit of the Tenants Association and all of the individual tenants residing in the Building." The agreement was approved by the court and the possession action was dismissed. All monies in the escrow account were released to the owner. No action was ever taken on appellees' motions to intervene, and on or about May 1, appellees vacated their apartments.

Paragraph two of the agreement reads in pertinent part:

The owner hereby agrees that within 24 hours following the vacation of each apartment of the Building, the occupant(s) of that apartment shall be paid the sum of $3,250.00 in cash on account of that apartment, less a deduction, to the extent necessary, on account of unpaid rent due for that apartment as of the date of the vacation thereof; *provided, that the foregoing payment obligation shall not apply with respect to any apartment(s) whose occupancy is unauthorized* .... [Emphasis added.]

Attached to the approved agreement were signed statements from each Tenants Association member, including appellees. Those statements all read as follows:

The undersigned Tenant of 2512 Q Street, N.W., Washington, D. C. does hereby join in and agree to the foregoing and annexed Agreement between the 2512 Q Street Tenants Association and The Holladay Corporation, and agrees to be bound by all of the terms thereof.

Giovannuchi and Segal submitted no statements.

The trial judge held that the sentence in paragraph two which excluded unauthorized occupants did not apply to appellees. He reasoned that appellees' signed statements attached to the settlement agreement were accepted by the owner. We think this reasoning obscured the factual issue requiring a trial.

To survive a summary judgment motion, "the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Nader v. de Toledano*, D.C.App., 408 A.2d 31, 42 (1979), quoting *International Underwriters, Inc. v. Boyle*, D.C.App., 365 A.2d 779, 782 (1976). The role of the court is not to resolve issues of fact but rather to see if "the record ... demonstrate[s] that there is no issue of fact from which a jury could find" for the nonmoving party. *Id.* The use of "summary judgment is inappropriate when such fac-

---

**2.** We thus do not reach appellant's point about estoppel and its elements.

tors as motive, intent, and other subjective feelings and reactions are necessary instruments in obtaining the truth." *Psychiatric Institute of Wash., D. C. v. Doctors Hospital Inc.*, D.C.App., 357 A.2d 405, 408 (1976).

At the hearing, the owner submitted an affidavit which stated in part:

Defendant [ (owner) ] specifically insisted on inclusion in paragraph two of the agreement of the proviso that the "payment obligation shall not apply with respect to any apartments whose occupancy is unauthorized."

Defendant intended the proviso referred to [above] to pertain to parties including plaintiffs [ (appellees) ] herein.

The owner argued that the settlement agreement was between it and the Tenants Association, and that the Association was responsible for getting 100 percent of its members who were authorized occupants to sign the agreement. If an unauthorized occupant signed, that signature was of no force and did not alter the agreement as to the proviso in paragraph two. Appellees, however, argued that because they were sub-tenants known to the owner, members of the Tenants Association, and signatories to the contract, they are entitled to the payment. They stated that the owner was on notice of their occupancy, particularly because of the pending motions to intervene, and could have specifically excluded them if their occupancy was unauthorized. By accepting appellees' signatures to the agreement and making no special mention for their exclusion, they assert that as a matter of law the owner accepted them as authorized occupants and beneficiaries of the contract.

When there is " '[a] question of interpretation of an integrated agreement [it] is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.' " *International Brotherhood of Painters and Allied Trades v. Hartford Accident and Indemnity Co.*, D.C.App., 388 A.2d 36, 43 (1978), quoting *1901 Wyoming Avenue Cooperative Association v. Lee*, D.C.App., 345 A.2d 456, 461 n.8 (1975). *See Howard University v. Durham*, D.C.App., 408 A.2d 1216, 1219 (1979).

The interpretation of paragraph two of the settlement agreement depends not only on the credibility of extrinsic evidence, but also on the inferences drawn from that evidence. There can be no question that the issue is material when the owner claims it was intended that appellees be excluded as unauthorized occupants while appellees allege they are entitled to the benefits of the agreement. We hold there is a genuine issue of material fact and that summary judgment was erroneously granted appellees.

*Reversed and remanded for further proceedings.*