Wayne Eliot STURDIVANT, Appellant,

v.

**SEABOARD SERVICE SYSTEM, LTD., Appellee.**

No. 82–715.

District of Columbia Court of Appeals.

Argued Feb. 23, 1983.

Decided April 6, 1983.

William S. Burroughs, Jr., Washington, D.C., for appellant.

Robert E. Higdon, Washington, D.C., for appellee.

Before NEWMAN, Chief Judge, and PRYOR and TERRY, Associate Judges.

PRYOR, Associate Judge:

Appellant, Wayne E. Sturdivant, initiated a defamation action in the Superior Court of the District of Columbia against appellee, Seaboard Service System, Ltd. The complaint alleged counts of both libel and slander arising from a written violation report, which appellee submitted to appellant's employer, Safeway Stores, Inc., and statements later made during an arbitration hearing.[1] On April 23, 1982, the trial court granted appellee's motion for summary judgment and this appeal followed.[2] Appellant argues that the trial court erred in granting summary judgment in that a genuine issue of material fact was raised by the

---

1. Appellant's count for libel, which concerns the written violation report of April 17, 1977, was not filed until January 11, 1979. A suit for libel must be filed within one year of the alleged defamation. See D.C.Code § 12–301(4) (1973). Since this aspect of the action was barred by the statute of limitations, the trial court properly granted summary judgment on this issue.

2. Appellee's first motion for summary judgment was denied on August 3, 1981, pursuant to Super.Ct.Civ.R. 16–I(a), as having been filed

pleadings and other information of record, and that appellee was therefore not entitled to judgment as a matter of law. We affirm.

Appellee contracted with the Safeway Stores to provide internal security reports concerning the conduct of Safeway employees. On April 19, 1977, appellant, who was employed as a food clerk at Safeway store # 723, was observed by a three person undercover investigative team. Ms. Harris, one of the investigators, filed a violation report with Safeway alleging that appellant had converted money received as a cashier and thereafter "waited on customers after placing [the] money in his pocket."

Ms. Harris stated at an investigative hearing that she gave appellant $2.09 for a purchase and that appellant placed the cash on the cash register ledge rather than inside the register. She further stated that after leaving the store, she turned to look through the plate glass window, and saw that the money had disappeared from the register. Ms. Harris allegedly saw appellant with his apron raised and his hand in his pants pocket. After appellant's shift, the cash in his cash drawer was counted and the detailed register tape was examined by the store manager. The $2.09 purchase did not appear on the tape. Appellant was immediately suspended from his employment, and on May 12, 1977, he was terminated for cause.

Local 400, United Food and Commercial Workers, AFL–CIO, of which appellant was a member, filed a grievance on his behalf on October 27, 1977. A prehearing conference was held and Ms. Harris appeared to proffer her version of the April 19, 1977 incident. On February 27, 1978, Ms. Harris repeated her version of the facts under oath at a formal arbitration hearing.[3] The arbiter thereafter issued an opinion denying the grievance filed by the union and concluding that appellant had failed to report the sale and then taken the $2.09 for his own use.

█ Summary judgment is a remedy that entitles the moving party to judgment as a matter of law when no genuine issue of material fact is present at the time the motion is made. Super.Ct.Civ.R. 56(c); *Johnson v. Weinberg,* 434 A.2d 404, 407 (D.C.1981); *Maddox v. Bano,* 422 A.2d 763, 764 (D.C.1980); *Nader v. de Toledano,* 408 A.2d 31, 41 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). In reviewing the trial court's ruling, we must ascertain whether any issue of fact pertinent to the ruling exists from which the trier of fact could find for the non-moving party. *Holladay Corp. v. Turkin,* 443 A.2d 1328, 1330 (D.C.1982) (citations omitted); *Thompson v. District of Columbia,* 407 A.2d 678, 680 (D.C.1979), citing *Owens v. Tiber Island Condominium Association,* 373 A.2d 890, 894 (D.C.1977). Although appellant urges that the trial court erred when it disposed of the slander count by means of summary judgment, we disagree.

█ It is well settled that a defamation action may not be grounded "on a party's statements preliminary to or in the course of a judicial proceeding so long as the defamatory matter has some relation—a standard broader than legal relevance—to the proceeding." *Brown v. Collins,* 131 U.S. App.D.C. 68, 71, 402 F.2d 209, 212 (1968). Appellant argues that the hearing was less than "judicial" and therefore a qualified not an absolute privilege attaches to Ms. Harris' allegedly slanderous statements.[4]

█ Whether an absolute privilege attaches to statements made by witnesses in arbitration proceedings has also been ad-

---

subsequent to the pretrial conference without leave of court.

**3.** Appellant alleges that the statement Ms. Harris made at the formal arbitration hearing was a "republication." We construe her statement to be merely a restatement of her original statement for the limited purpose of arbitration.

**4.** A qualified privilege is rebuttable upon a showing that the person holding the privilege exceeded his or her scope or acted with express malice. *Smith v. District of Columbia,* 399 A.2d 213, 221 (D.C.1979).

dressed. While some jurisdictions favor a qualified rather than an absolute privilege, we join with what we find to be the more reasoned view that an absolute privilege is applicable because it enables participants to state and support their positions without instilling a fear of retaliation, *i.e.,* an action for damages. *See General Motors Corporation v. Mendicki,* 367 F.2d 66 (10th Cir. 1966); *Neece v. Kantu,* 84 N.M. 700, 507 P.2d 447 (N.M.Ct.App.1973). For similar reasons, the protection of an absolute privilege has been extended to statements made pursuant to an arbitration proceeding, *Barnes v. Avis Rent A Car System, Inc.,* 466 F.Supp. 907 (D.D.C.1979), provided the publication is made to persons with a legitimate job-related interest in receiving it. *Joftes v. Kaufman,* 324 F.Supp. 660, 664 (D.D.C. 1971). In the instant case, no showing of excessive publication exists.

In reaching our decision, we cannot ignore the impact that a contrary decision would have on the Civil Arbitration Rules issued by the Superior Court on February 15, 1982. To deny an absolute privilege to witnesses, parties, arbiters and counsel who participate in these proceedings, would chill the effect of the new rules. Clearly if parties in arbitration hearings were given less protection than those in purely judicial proceedings, a disincentive would be built into the system.

Appellant further contends that the privilege is personal to Ms. Harris and does not extend to Seaboard, her employer. Appellant attempts to characterize the witness as an independent contractor, rather than as an employee of Seaboard, so as to take the question outside of the ambit of vicarious liability.[5] The undisputed facts confirm that Ms. Harris was Seaboard's agent and that Seaboard in turn acted as Safeway's agent. In this posture, both Ms. Harris and Seaboard were representatives of Safeway Stores, and would be protected by an unqualified privilege. *See General Motors Corporation v. Mendicki, supra,* 367 F.2d at 70.

Appellant has raised no issue of fact apart from a suggestion that the publication was made with malice, "*i.e.,* the falsity of [Ms. Harris'] accusations of theft." Having concluded that an absolute privilege attaches, the question of malice is inapposite. Since there appear to be no genuine issues as to any material fact, the trial court properly found that appellee was entitled to judgment as a matter of law.

*Affirmed.*

---

5. An employer is liable for the intentional torts of its employees if a master-servant relationship existed between the parties and the alleged tort occurred while the servant was acting within the scope of his or her employment. If it can be shown that the tort-feasor was an independent contractor then the first tier of the analysis is usually defeated and an action for vicarious liability will not lie. *See* Restatement (Second) of Agency §§ 219 and 220 (1957).