541 A.2d 621 (1988)
Harnam S. ARNEJA, Appellant,
v.
Robert W. GILDAR, Appellee.
No. 87-481.
District of Columbia Court of Appeals.
Argued March 10, 1988.
Decided May 11, 1988.
L. Barrett Boss, with whom Matthew L. Myers, Washington, D.C., was on the brief, for appellant.
D. Stephenson Schwinn, with whom David P. Durbin and Mary Ann Snow, Washington, D.C., were on the brief, for appellee.
*622 Before PRYOR, Chief Judge, STEADMAN, Associate Judge, and GALLAGHER, Senior Judge.
GALLAGHER, Senior Judge:
This is an appeal from the trial court's order granting appellee's motion for summary judgment in an action for slander. The trial court ruled that the alleged defamatory statements uttered by appellee were within the scope of absolute privilege, and thereby immune from an action for slander. We affirm.
Both appellant and appellee are attorneys licensed to practice law in the District of Columbia. They were representing opposing parties in a landlord-tenant dispute. Appellant represented the tenants, and appellee was counsel for the landlord. The proceeding involved an interpretation of the small landlord exemption of the Rental Housing Act of 1980.[1] On behalf of the tenants, appellant filed a petition with the District of Columbia Rental Accommodations Office challenging an exemption from rent control granted to the landlord's property. The alleged slanderous statements were uttered while both parties and their clients were present in a hearing room at the Rental Accommodations Office, awaiting the imminent arrival of the hearing examiner to adjudicate the dispute.
Before the hearing examiner arrived, appellee concededly[2] made the following unsolicited remarks to appellant:
You're unnecessarily pursuing this case. You don't understand the law. Where did you go to law school; you should go back to law school before you practice law. You don't understand. You better learn your English, go to elementary school.
Appellant asserts that these statements were ad hominen attacks on his ethnicity and educational background,[3] which were said with malice to impugn his professional capacity as a lawyer. Appellant claims that, as a result, he suffered pecuniary losses as well as humiliation and embarrassment before his clients. Appellee, on the other hand, asserted that his statements were intended to lead to a settlement of the dispute, viz., to induce appellant to cease the litigation by highlighting his supposed incredulous position.
After a hearing on appellee's motion for summary judgment, the trial court found the alleged defamatory statements to be sufficiently related to the underlying disputethe interpretation of a statuteto fall within the protective scope of the absolute privilege, which affords attorneys absolute immunity from liability for statements made in the course of a judicial proceeding. The trial judge found "a very strong connection between the words alleged to have been said by [appellee] and the procedure that was involved in this landlord and tenant case." He further opined that "the English language is an issue" in disputes involving opposing interpretations of a statute. In addition, the trial judge considered that the physical location and temporal proximity of the partiessitting in a hearing room awaiting the imminent arrival of the examinerjustified concluding the statements were made preliminary to a judicial proceeding.
A party is entitled to the remedy of summary judgment as a matter of law *623 when there is no genuine issue as to any material fact in dispute. Super.Ct.Civ.R. 56(c); see Sturdivant v. Seaboard Service System, Ltd., 459 A.2d 1058, 1059 (D.C. 1983) (citations omitted). In reviewing the trial court's order granting the motion for summary judgment, this court conducts an independent review of the record. The evidence is viewed in a light most favorable to the party opposing the motion. Spellman v. American Security Bank, N.A., 504 A.2d 1119, 1122 (D.C.1986); Brown v. General Motors Acceptance Corp., 490 A.2d 1125, 1126 (D.C.1985). In addition, "[t]he party opposing summary judgment is entitled to the benefit of all favorable inferences that can be drawn from the evidence." Holland v. Hannan, 456 A.2d 807, 815 (D.C.1983) (citations omitted). In reviewing the ruling of the trial court, "we must ascertain whether any issue of fact pertinent to the ruling exists from which the trier of fact could find for the non-moving party." Sturdivant, supra, 459 A.2d at 1059; Holland, supra, 456 A.2d at 814-15. Resolving all pertinent issues of fact in favor of appellant, we find no error in the trial court's ruling.
In this jurisdiction, an attorney "is protected by an absolute privilege to publish false and defamatory matter of another" during the course of or preliminary to a judicial proceeding, provided the statements bear some relation to the proceeding. Mohler v. Houston, 356 A.2d 646, 647 (D.C.1976) (per curiam); see RESTATEMENT (SECOND) OF TORTS § 586 (1977).[4] The privilege affords an attorney absolute immunity from actions in defamation for communications related to judicial proceedings. Sturdivant, supra, 459 A.2d at 1059. The determination of whether a communication is privileged is a question of law for the court. Mosrie v. Trussell, 467 A.2d 475, 477 (D.C.1983); Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, 374 A.2d 284, 290 (D.C.1977) (citations omitted). For the absolute immunity of the privilege to apply, two requirements must be satisfied: (1) the statement must have been made in the course of or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying proceeding.
The scope of the absolute privilege has been extended to encompass quasi-judicial proceedings conducted by administrative agencies. See Mazanderan v. McGranery, 490 A.2d 180, 181-82 (D.C.1984) (Public Vehicles Division of D.C. Department of Mass Transportation); Sturdivant, supra, 459 A.2d at 1059-60 (private arbitration proceedings). The shield of absolute immunity extends to adversarial proceedings conducted before administrative agencies "because it enables participants to state and support their positions without instilling a fear of retaliation, i.e., an action for damages." Sturdivant, supra, 459 A.2d at 1060. We therefore conclude that the proceeding conducted before the Rental Accommodations Office constituted a proceeding within the ambit of the judicial privilege.
A more difficult question is whether the defamatory statements occurred "preliminary to" that administrative proceeding. According to the American Law Institute, "communications preliminary to a proposed judicial proceeding" includes "conferences and other communications preliminary to the proceeding." RESTATEMENT (SECOND) OF TORTS § 586 & comment a (1977). Given that the parties were involved in litigation, present in a hearing room, and awaiting commencement of the proceeding to adjudicate their dispute, we believe the trial court did not err in concluding the statements were made preliminary to a judicial proceeding.[5]
*624 The question of relevance is a question of law determined by the court. Mohler, supra, 356 A.2d at 647 (citations omitted). In assessing whether the statement bears some relation to the proceeding, "[t]he communication need not be relevant in the legal sense; the term is very liberally construed." Id; see Brown v. Collins, 131 U.S.App.D.C. 68, 71, 402 F.2d 209, 212 (1968). Statements will be "absolutely privileged if they have enough appearance of connection with the case ... so that a reasonable man might think them relevant." Mohler, supra, 356 A.2d at 647 (quoting Brown v. Shimabukuro, 73 App. D.C. 194, 195, 118 F.2d 17, 18 (1941). Considering the statements in the context in which they were made, "[a]ll doubt should be resolved in favor of relevancy or pertinency...." Young v. Young, 57 App.D.C. 157, 159, 18 F.2d 807, 809 (1927).[6] The trial court found a "strong connection" between the defamatory statements made in the hearing room and the underlying issue in the landlord-tenant dispute. The statements "you don't understand English" and "you don't understand the law," for example, were deemed by the trial court to be "related" to the disputed interpretation of the Rental Housing Act, i.e., the parties' understanding and legal interpretation of the statute was at the core of the dispute. Liberally considering the relation of the statements made in this context, we conclude that a reasonable person might construe[7] the defamatory remarks to be sufficiently related to the merits of the proceeding to fall within the protective shield of the absolute privilege.
The issues of fact disputed by appellant, viz., that (1) no settlement discussions transpired in the hearing room, and (2) the remarks were ethnic slurs, are not controlling in determining whether, as a matter of law, appellee is entitled to the immunity of absolute privilege. Furthermore, the motive of appellee in uttering these remarks is irrelevant under the doctrine of absolute privilege.[8]See Sturdivant, supra, 459 A.2d at 1060.
Although we must recognize the absolute privilege in this instance, we naturally do not wish to be understood as condoning remarks such as those concededly (for purposes of the motion) made by appellee. Attorneys do not possess a license to defame their adversaries in the course of a judicial proceeding. The immunity of the absolute privilege supports the public policy of allowing counsel to zealously represent a client's interests without fear of reprisal through defamation actions.[9] A separate public policy concern, however, is the integrity and civility of legal proceedings, especially as perceived by the public. A potential alternative mechanism available *625 to deal with outrageous conduct by an attorney in lieu of an action for damages in slander may be the policing function of the Bar Disciplinary Committee. (E.g., D.C.Bar R. XI, § 2, app. EC 7-10).
Affirmed.
PRYOR, Chief Judge, dissenting:
The majority opinion cogently states a view for affirming the trial court ruling. Critical to our decision is the determination whether the questioned statements were made in the course of a judicial proceeding or even a conference preliminary to a proceeding. Recognizing, as does the majority, that it is difficult to draw a boundary for this absolute privilege, I am unable to distinguish this case from a similar scenario which occurs in the hallway or just outside of the courthouse. I agree that the relevance of the statements are a question of law. However, I think in this case, in particular, it is a question of fact whether there was a conference or even a discussion between the lawyers or whether this was a circumstance where one attorney was simply unilaterally abusing the other. As liberally as the privilege is to be construed, I question if the latter conduct should be protected.
I would remand for resolution of the factual question which I have noted.
NOTES
[1] 1980 D.C.Stat. 3-131, § 206(a)(3), codified at D.C.Code § 45-1516(a)(3) (1981) (expired April 30, 1985); see Rental Housing Act of 1985, 1985 D.C.Stat. 6-10, § 205(a)(3), codified at D.C.Code § 45-2515(a)(3) (1986 Repl.).
[2] For the purpose of his motion for summary judgment, appellee does not contest that he made the remarks asserted. In applying the doctrine of absolute privilege, we need not decide whether these alleged statements were defamatory.
[3] Appellant was born in India. He earned several academic degrees, including a Bachelor of Arts degree from Punjab University, a Master of Economics degree from Agra University, and a law degree from the University of New Delhi. Although his native language is Punjabi, appellant has spoken English since the fifth grade, and he received his formal legal training in English. Appellant emigrated to the United States in 1971. He earned a Master of Comparative Law (American Practice) degree from George Washington University. He became a member of the District of Columbia Bar in 1978. In reverence to the doctrines of his Sikh religion, appellant wears a turban while in public.
[4] The RESTATEMENT provides:

An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.
RESTATEMENT (SECOND) OF TORTS § 586 (1977).
[5] The parties' physical presence in the hearing room substantially affects our analysis of this issue. If these same remarks were uttered outside the courtroom, a different question might be presented on the issue of absolute privilege, depending upon the particular circumstances. See, e.g., Petrus v. Smith, 91 A.D.2d 1190, 459 N.Y.S.2d 173 (1983) (absolute privilege may not extend to statements made outside the courthouse); Sussman v. Damian, 355 So.2d 809 (Fla. Dist.Ct.App.1977) (statements made on elevator held not absolutely privileged).
[6] See also Club Valencia Homeowners Association, Inc. v. Valencia Associates, 712 P.2d 1024, 1027 (Colo.Ct.App.1985); Chard v. Galton, 277 Or. 109, 111, 559 P.2d 1280, 1282 (1977); Smith v. Griffiths, 327 Pa.Super. 418, 421, 476 A.2d 22, 25 (1984) (citing Greenberg v. Aetna Insurance Co., 427 Pa. 511, 514-15, 235 A.2d 576, 577-78 (1967)).
[7] See Mohler, supra, 356 A.2d at 647.
[8] Malice or improper motive is a relevant consideration, under some circumstances reserved for a jury, when addressing the applicability of the qualified privilege, as distinguished from the absolute privilege involved here. See Mosrie, supra, 467 A.2d at 477-80; Altimont, supra, 374 A.2d at 290-91.
[9] The necessity of the absolute privilege to protect comments related to judicial and administrative proceedings does not mean that attorneys disposed toward dispensing verbal abuse during proceedings may do so with impunity. It goes without saying that courts and agencies should insist upon decent conduct by attorneys appearing before them, as a matter of civility and courtroom decorum. The various regulatory bodies, whether they be judicial commissions or an arm of the Bar, would reasonably be expected to understand and support any sensible exercise of discipline by the presiding judge or hearing officer pertaining to such conduct. Trial judges, after all, are not mere spectators in the courtroom. Quite naturally, they have the duty to preside over an orderly courtroom and move cases along. While ours is an adversary system, this too has its limitations. The two factors, the adversary system and the search for justice in a civil way, are quite capable of being balanced.