*For reversal*—None.

---

JOSEPH H. EVERS, DEFENDANT IN ERROR, v. WILLIAM KROUSE, PLAINTIFF IN ERROR.

Argued March 1, 1904—Decided June 20, 1904.

An act done by a servant while engaged in the work of his master, but entirely disconnected therefrom, done, not as a means or for the purpose of performing that work, but solely for the accomplishment of the independent malicious or mischievous purpose of the servant, is not in any sense the act of the master; and, for injuries resulting to a third person from such an act, the servant alone is responsible.

---

On error to the Supreme Court.

For the plaintiff in error, *Cowles & Carey.*

For the defendant in error, *Addison Ely.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error (the defendant below) resides at No. — Park Place, in the city of

Passaic. On the 24th of July, 1901, his minor son was directed by Mrs. Krouse, the wife of the defendant, to sprinkle the lawn in front of the house with water from the garden hose. While he was engaged in this work a Mrs. Glazier, who had borrowed from Mr. Evers (the plaintiff below) his horse and wagon, drove down Park Place to her own home, which was nearly opposite the Krouse residence, tied the horse to a hitching-post along the curb and left it standing there while she went into her house. During her absence young Krouse turned the hose upon the horse, frightening him so that he broke loose and ran away. Before being caught he had so injured himself that it was found necessary to destroy him; the wagon was practically demolished. This suit was brought to recover the value of the horse and wagon and resulted in a verdict and judgment for the plaintiff. The only error assigned which requires consideration is directed at the charge of the judge to the jury in dealing with the question of the liability of the defendant. The instruction complained of was as follows: "The boy was engaged in sprinkling the lawn. He was accustomed to do it. It was his father's lawn. Was he then in his father's service while he was doing that? Was that his father's business? If he was, then, for the misconduct of the boy in the use of these things which he was using about his father's business, the father would be responsible just as if the father himself had done it. So if you find that the boy was in his father's service and through neglect, through lack of ordinary care, or from a mischievous disposition, threw this water upon or over the horse in such a way as was likely to frighten the horse, then both father and son would be responsible." It is contended that it was erroneous to instruct the jury that the father would be liable to the plaintiff if they found that the boy "through a mischievous disposition threw this water upon or over the horse."

The general rule as to the question of the master's liability for the wrongful acts of his servant is thus stated by Mr. Justice Fort, speaking for this court in the case of *Holler* v. *Ross*, 39 *Vroom* 324: "The servant cannot bind the master to respond in damages to the plaintiff unless it be shown that

the act which the servant did, which caused the injury, was an act which was expressly, or by necessary implication, within the line of his duty under his employment. * * * For a willful act done by a servant, not within the scope of his employment, no liability attaches to the master."

A reference to the text-books which deal with this subject shows that the rule laid down in Holler *v.* Ross has been generally accepted in other jurisdictions, notwithstanding there has been much contrariety of result reached in the application of the rule; and this, it would seem, is due to the assumption in some jurisdictions that an act done by a servant while engaged in the master's work is necessarily an act done within the scope of the former's employment. But this is conspicuously a *non sequitur*. An act done by the servant while engaged in the work of his master may be entirely disconnected therefrom, done, not as a means or for the purpose of performing that work, but solely for the accomplishment of the independent malicious or mischievous purpose of the servant. Such an act is not, as a matter of fact, the act of the master in any sense and should not be deemed to be so as a matter of law. As to it, the relation of master and servant does not exist between the parties, and for the injury resulting to a third person from it the servant alone should be held responsible. *Aycrigg's Executor* v. *New York and Erie Railroad Co.*, 1 *Vroom* 460; *Rounds* v. *Delaware, Lackawanna and Western Railroad Co.*, 64 *N. Y.* 129; *Bowler* v. *O'Connell*, 162 *Mass.* 319.

The decision of this court in the case of *Bittle* v. *Camden and Atlantic Railroad Co.*, 26 *Vroom* 615, is in nowise opposed to this view. In that case the defendant company was held responsible to the plaintiff for injuries received by him through the running away of his horse, the animal having been frightened at the blowing of the whistle upon one of the defendant company's locomotives by the engineer. The statute of the state in force at the time of the accident required that a whistle should be blown, or a bell rung, upon the engine whenever a train reached a point three hundred yards distant from a highway crossing. The defendant company's

train was approaching a highway crossing at the time when the whistle was blown, and the opinion states (at *p.* 620) that "upon review of this case the conclusion is that under the statute authorizing the points and distances at and for which either a whistle shall be blown or a bell rung, the defendant had a right to blow the whistle at this point." Manifestly, if the defendant had this right, it was because the statute imposed upon it the duty of doing so, and the performance of that duty rested upon the agent of the company who was operating the engine. The plaintiff's claim was, and his proof showed, that the company's engineer, having observed that the plaintiff's horse had become frightened and almost unmanageable at the approach of the train, wantonly and maliciously blew an extraordinarily loud and shrill blast upon the whistle for the purpose of still further frightening the animal. The conclusion reached, that the company was responsible, was the necessary result of the application of the first branch of the rule laid down in Holler *v.* Ross, namely, that the master is responsible for injuries resulting from an act done by his servant within the scope of the latter's employment, without regard to whether the act was done negligently or even maliciously. The blowing of the whistle at the point where the company's engineer blew it was a part of the duty which he was employed to perform, and it was because of that fact that the rule of *respondeat superior* was applicable. If the engineer in the case referred to had maliciously increased the fright of the plaintiff's horse by throwing lumps of coal at him from the tender while the train was passing by, this act would as plainly not have been within the scope of his employment (notwithstanding that the coal was furnished him by the employer to be used in the employer's business) as his act in blowing the whistle was within it. For the one act the master would not be responsible, for the other he would be.

Turning again to the case now under review. If the act of the defendant's son in throwing water upon the plaintiff's horse was not the result of his careless handling of the garden hose while sprinkling his father's lawn, but was deliberately

done by him purely out of a spirit of mischief, for the purpose of frightening the animal, the fact that he used the tool supplied to him for the doing of his father's work for the accomplishment of his own mischievous purpose did not make it an act within the scope of his employment and did not render the defendant liable for the injury resulting therefrom.

The instruction complained of was erroneous, and for this reason the judgment under review should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY.  12.