Dermot MURPHY, Appellant,

v.

The ARMY DISTAFF FOUNDATION,
INC., Appellee.

No. 82-5.

District of Columbia Court of Appeals.

Argued Sept. 30, 1982.
Decided March 11, 1983.

Janet Burnside, Cleveland, Ohio, with
whom Robert Wright, and William Martin
Green, Washington, D.C., were on the brief,
for appellant.

Richard W. Galiher, with whom Elizabeth
J. Haegelin, Washington, D.C., was on the
brief, for appellee.

Before NEBEKER, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellant, Dermot Murphy, brought suit to recover from appellee, The Army Distaff Foundation, Inc., for injuries sustained when he was shot by Ernst Flink, an employee of The Army Distaff Foundation, while appellant was trespassing on Foundation grounds. After pretrial discovery, appellee moved for summary judgment on all counts of the complaint.[1] Following oral argument, the court granted summary judgment in appellee's favor. Appellant thereafter filed a motion for rehearing which was denied. This appeal followed.

Appellant contends that the trial court erred in granting appellee's motion for summary judgment as the pleadings, deposition testimony, interrogatories and other information of record raise genuine issues of material facts as to whether Ernst Flink was acting within the scope of appellee's employment when he shot Dermot Murphy, and whether Ernst Flink's supervisors either knew or should have known that Mr. Flink carried a gun while walking on the grounds. Upon consideration of these questions, we reverse and remand for trial on these issues.

I

The following facts are undisputed. Appellee manages a retirement home in Northwest Washington for the wives of deceased army officers. On October 28, 1977, at approximately midnight, Dermot Murphy and his friend, Nancy Rey, drove into the parking lot of the Army Distaff Hall in appellant's car, admittedly to meet common friends, drink beer, and "park" intimately. Ernst Flink, who had been a gardener and resident of the Foundation grounds for over 20 years, observed the two youths trespassing on the lot where he had previously encountered young people using drugs and alcohol, engaging in sexual activities and littering the property. Mr. Flink, who unbeknown to appellant, was carrying a gun, approached appellant and asked that he and his friend leave the grounds. An argument ensued, culminating in appellant's striking Mr. Flink. Mr. Flink drew his gun and shot appellant six times in the arms and torso.

II

■ Summary judgment is an extreme remedy, entitling the moving party to judgment as a matter of law only when no genuine issue of material fact is present at the time the motion is made. Super.Ct. Civ.R. 56(c); *Johnson v. Weinberg*, 434 A.2d 404, 407 (D.C.1981); *Maddox v. Bano*, 422 A.2d 763, 764 (D.C.1980); *Nader v. de Toledano*, 408 A.2d 31, 41 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). While it is true that the moving party bears the burden of demonstrating that no material factual dispute exists, all inferences drawn from subsidiary facts are to be resolved against him or her. *Johnson v. Weinberg, supra,* 434 A.2d at 407; *Willis v. Cheek,* 387 A.2d 716, 719 (D.C.1978).

■ The function of this court, in reviewing the trial court's ruling, is to ascertain whether any issue of fact pertinent to the ruling exists. *Thompson v. District of Columbia,* 407 A.2d 678, 680 (D.C.1979), citing *Owens v. Tiber Island Condominium Association,* 373 A.2d 890, 894 (D.C.1977). Although appellant proffered several theories of liability against appellee, we conclude that two of the asserted causes of action—liability based on the doctrine of respondeat superior, and the allegation of negligent supervision—should not have been disposed of by means of summary judgment.

III

RESPONDEAT SUPERIOR

■ In order to prevail on this theory of liability, appellant must prove that a mas-

1. The following theories were averred at trial: negligence per se; strict liability; negligent supervision; imputed negligence, and respondeat superior.

ter-servant relationship existed between Ernst Flink and The Army Distaff Foundation, and that the alleged tort occurred while the employee was acting within the "scope of his employment."[2] *See Johnson v. Weinberg, supra,* 434 A.2d at 408.

The trial court found as a matter of law that Mr. Flink's actions were unforeseeable by the defendant and could not be found by a reasonable juror to come within the scope of employment. In the view of the trial judge, the question of whether the incident occurred within the scope of employment turned on Mr. Flink's job description and responsibilities, *i.e.,* whether in addition to being a gardener, he acted in the capacity of a security guard. In holding that Mr. Flink was not acting within the scope of his employment the trial court concluded that he was "solely a gardener" and that he had "no security duties." While the evidence of record clearly shows that Mr. Flink was a gardener, there is indicia that he had at least some security functions. Mr. Kenneth Pace, Mr. Flink's immediate supervisor told investigative police officers, shortly after the shooting, that Mr. Flink checks the parking lots as one of his "normal duties." In addition, Mr. Wyly K. Jones, manager and administrator of the Army Distaff Hall, stated: "He lives in Knoll House as part of the conditions of employment, and he does secure and lock up the Knoll House."[3]

Ernst Flink initially approached appellant regarding a matter which related, however remotely, to an undisputed aspect of his employment—keeping the parking lot free from litter. His personal concern that there be no encroachment upon the quiet enjoyment of his place of residence may have played an integral part in his conduct, but that question is not now before us. Whether the assault occurred within the scope of his employment or was a personal adventure is a question which must be evaluated on a factual basis. Since there is some indication that the shooting was the outgrowth of a job related encounter the motion for summary judgment should not have been granted.

## IV

### NEGLIGENT SUPERVISION

To invoke this theory of liability, appellant must establish that appellee knew or should have known that its employee regularly ejected trespassers while armed, and that the employer failed to take reasonable precautionary measures in supervising him. Aside from the question of vicarious liability, appellee may be directly liable if it failed to exercise reasonable care to avoid harm under the circumstances. Under this approach to liability, the employer's duty to supervise is not merely to be judged by the concept of respondeat superior. Rather, it is an allegation of direct negligence and "[t]his duty extends even to activities which, . . . [sometimes] are outside the scope of employment." *See International Distributing Corp. v. American District Telegraph Company,* 186 U.S.App.D.C. 305, 308, 569 F.2d 136, 139 (1977).

Recognizing that an employer is not an insurer, § 213 of the RESTATEMENT (SECOND) OF AGENCY (1957) defines negligent supervision as follows:

> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

---

**2.** Scope of employment as defined in § 228 of the RESTATEMENT (SECOND) OF AGENCY (1957) is:

SCOPE OF EMPLOYMENT
§ 228. General Statement
(1) Conduct of a servant is within the scope of employment if, but only if:
    (a) it is of the kind he is employed to perform;
    (b) it occurs substantially within the authorized time and space limits;
    (c) it is actuated, at least in part, by a purpose to serve the master, and

**3.** Deposition at 396.

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders or in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk or harm to others;

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

■ The present record reveals that Mr. Flink, with the knowledge of his supervisor, John Aiker, frequently took evening walks around the grounds, and that he had previously confronted youths in the parking lot. We agree with the trial court that the mere fact that "Mr. Flink may have made a chance remark a year before the incident does not support the inference that defendant was put on notice that Mr. Flink carried a gun or had a propensity to use one." This circumstance, however, does not defeat appellant's claim for negligent supervision as "[o]ne who engages in an enterprise is under a duty to anticipate and to guard against the human traits of his employees which unless regulated are likely to harm others." *Id.* comment g, p. 461.

Given the conflicting state of the evidence, direct and circumstantial, we are compelled to conclude that appellee did not meet the summary judgment standard that there was no genuine issue of material fact as to this aspect of the case.[4]

Accordingly, the summary judgment on these two counts of the complaint must be reversed and remanded for trial.

*Reversed and remanded.*

NEBEKER, Associate Judge, dissenting:

I am unable to agree with the majority that there exists any issue of material fact in this case requiring reversal of the summary judgment motions granted below. First, in order for appellant to succeed on the basis of respondeat superior, the shooting of appellant by Flink must be determined to have occurred within the scope of Flink's employment. *Penn Central Transportation Co. v. Reddick,* 398 A.2d 27, 29 (D.C.1979). While vicarious liability for intentional torts now extends beyond actions specifically authorized by the employer, it is limited to "situations where the employment provides a 'peculiar opportunity and ... incentive for such loss of temper,' W. PROSSER, *Law of Torts* § 70 at 466, as where an argument is likely by virtue of the servant's duties, and the conduct is wholly or partially in furtherance of the master's business." *Penn Central Transportation Co. v. Reddick, supra,* 398 A.2d at 31. An employer is not responsible for its employee's conduct where the employee's actions constitute a marked and decided departure from the employer's business.

The issue to be decided, then, is "whether the conduct in question is 'so unforeseeable as to make it unfair to charge the employer with responsibility.'" *Id.* at 30. "When a servant's conduct is wholly unprovoked, highly unusual, and outrageous, these facts alone may be sufficient to indicate that the motive for an intentional tort was personal." W. PROSSER, *Law of Torts* § 70 at 465.

Here, the facts are clear that Flink's duties extended solely to gardening during

---

4. We read the dissenting opinion to say that there are no issues of material fact to be resolved with regard to liability based upon respondeat superior and negligent supervision. Given the total circumstances of record and the course of conduct alleged against appellee and its employee, we think there are at least sufficient material questions of fact to entitle appellant to present his case-in-chief to the trial court. Whether appellant can withstand a motion for directed verdict or prevail on these issues is not within the province of an appellate court—with the case in this posture—to decide. Thus, we differ with our dissenting colleague that there are no genuine issues of material fact sufficient to defeat a motion for summary judgment.

the day and securing a building at night. He was never authorized to eject trespassers from the grounds. The late-night altercation between Flink and Murphy was neither a direct outgrowth of Flink's instructions or job assignment, nor an integral part of The Army Distaff Foundation's business activities, interests or objectives. Instead, Flink's actions suggest a purely personal motive unknown to appellees and wholly unforeseeable. Thus, as a matter of law, the assault by Flink upon Murphy was in no degree committed for appellee's benefit, nor the product of a job related controversy, *see Lyon v. Carey,* 174 U.S.App.D.C. 422, 533 F.2d 649 (1976), but rather "solely for the accomplishment of the independent malicious or mischievous purpose of the servant" and therefore outside the scope of Flink's employment. *Great A&P Tea Co. v. Aveilhe,* 116 A.2d 162, 165 (D.C.Mun.App. 1955), quoting *Evers v. Krouse,* 70 N.J.L. 653, 58 A. 181 (1904).

Second, the majority errs with respect to the negligent supervision claim. This cause of action requires actual negligence on the part of the principal when *conducting an activity* through its servants. *See* RESTATEMENT (SECOND) OF AGENCY § 213 (1957). There is no evidence of record indicating that The Army Distaff Foundation in any way participated in Flink's ejectment of trespassers from the grounds. Flink's employment duties entailed his basic job as a gardener during the day, and securing the Knoll House, where he lived, at night. The unfortunate incident involving Murphy was not in any way even tangentially related to either of these activities as was the case in *International Distributing Corp. v. American District Telegraph Co.,* 186 U.S.App. D.C. 305, 569 F.2d 136 (1977).

Aside from failing to clear this initial hurdle, the majority opinion strains to develop a conceivable basis upon which to build a negligent supervision case. Initial-ly, the majority states that "appellant must establish that appellee knew or should have known that its employee *regularly* ejected trespassers *while armed.*" (Emphasis added.) After declaring this the standard, the majority admits that there was no evidence presented which would even support the inference that appellee had notice of Flink's ever carrying a gun on the grounds. The majority then attempts to salvage appellant's cause of action by latching on to language found in RESTATEMENT (SECOND) OF AGENCY § 213 comment g. Under the heading of "inadequate regulations," this comment states that "[o]ne who engages in an enterprise is under a duty to anticipate and to guard against the human traits of his employees which unless regulated are likely to harm others." *Id.* Apparently the majority subscribes to the position that it is a knowable "human trait" of those hired to garden and secure buildings at night to chase trespassers off the employer's grounds while armed. A reading of the illustrations listed under comment g affirms that the scope of the language was never intended to reach this far, nor should it.[1] This thoughtless application of the literal passages of the RESTATEMENTS is a misuse of those works.

The trial court properly dismissed each of appellant's claims on summary judgment grounds. To the extent that the majority found genuine issues of material fact relating to claims of respondeat superior and negligent supervision, I respectfully dissent.

---

1. The "inadequate regulations" examples given are (1) a railway which failed to make adequate rules for the use of its tracks by passing trains running in opposite directions; (2) a busy garage with an entrance across a sidewalk which did not deal with the problem of pedestrians crossing; and (3) a powder manufacturer who failed to regulate the disposal of his accumulated product.