Sotirios SOKOS, Plaintiff,

v.

HILTON HOTELS CORPORATION,
et al., Defendants.

Civil Action No. 01–963(RBW).

United States District Court,
District of Columbia.

Sept. 23, 2003.

Athan T. Tsimpedes, Esq., Rockville, MD, for the Plaintiff.

Anita Barondes, Esq., Raymond C. Baldwin, Esq., Seyforth & Shaw, Washington, DC, for the Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

The complaint in this matter seeks monetary damages for the plaintiff's termination by the defendants and asserts claims of wrongful discharge; negligent hiring, supervision and retention; and tortious interference with contractual relations. This matter is currently before the Court on the defendants' motion for summary judgment and a bill of costs submitted by the defendants in response to the imposition of sanctions on plaintiff's counsel by the Court. The defendants' summary judgment motion principally asserts that the plaintiff's claims are governed by a collective bargaining agreement ("CBA") and thus preempted by the Labor Management Relations Act ("LMRA"), and that his case should be dismissed because the plaintiff failed to pursue binding arbitration pursuant to this agreement. For the reasons set forth below, the Court will grant the defendants' summary judgment motion and impose a $4,177.50 sanction against plaintiff's counsel for filing Plaintiff's Motion for Sanctions.

## I. *Factual Background*

The plaintiff was employed by defendant Hilton Hotels Corporation at the Hilton Washington & Towers ("Hilton" or the "Hotel") as a plumber from approximately 1987 through May 1999. Defendants' Statement of Material Facts as to Which There is No Genuine Issue ("Defs.' Facts") at ¶¶ 1–2; Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff Sotirios Sokos' Amended Opposition of Defendant Hilton Hotels Corporation's Motion for Summary Judgment ("Pl.'s Opp'n") at 3. While employed by the Hilton, the plaintiff was a member of the Local 99–99A ("Local 99") union and worked under a collective bargaining agreement ("CBA"). Defs.' Facts at ¶ 6; Pl.'s Opp'n at 3.

## (A) *The Collective Bargaining Agreement*

The "jurisdiction" of Local 99 pursuant to the CBA between Hilton and the union encompassed the "operation, maintenance and repair of . . . [a]ll plumbing and piping including water, gas, heating, steam and sanitation systems . . . [and a]ny and all equipment under the supervision of the Chief Engineer." Defendants' Motion for Summary Judgment ("Defs.' Mot."), Exhibit ("Ex.") 3 at 000005. The CBA also provided that

> [i]f, in the opinion of the Chief Engineer and/or the Employer, any maintenance or repairs covered in this jurisdiction are beyond the scope of the employees to perform, the Employer, upon application to and consented by the Union, may call in outside help to perform the same in each single instance so applied for and granted . . .

*Id.* In addition, and of significance to this case, the CBA sets forth the responsibilities of the Chief Engineer. *Id.* at 000012. Section 5.3 of the CBA states that:

> [a]ll orders and instructions for . . . mechanical repairs and maintenance work shall be issued by the Chief Engineer, his/her designated assistant (and/or the General Manager or Building Superintendent or Director), and he/she shall have the responsibility for hiring and discharging all other employees covered by this Agreement, provided, however, that in exercising such responsibility, he/she shall conform to uniform personnel policies promulgated by the Employer and applicable to the hiring and discharge of all employees in the Employer's employ.

*Id.* Finally, the CBA contains a mandatory grievance process which is implemented through binding arbitration if the griev-

ance cannot be resolved by the union or the Hotel. *Id.* at 000014. Specifically, section 6.1 of the CBA mandates that "[a]ny dispute arising out of the interpretation or application of this Agreement that is not disposed by the Union and the Employer within a reasonable time shall, at the written request of either party, be submitted to arbitration." *Id.*

**(B)** *The Incident Involving the Plaintiff's Termination*

In May 1999, defendant Jay Carley ("Carley"), who was defendant Hilton's Director of Property Operations, had a meeting with the Property Operations Department personnel, which was the department where the plaintiff worked, to discuss "a problem of missing materials." Defs.' Facts ¶¶ 11, 15. On May 27, 1999, shortly after the meeting, defendant Carley received an anonymous telephone call informing him that the plaintiff had been seen placing Hilton property in his vehicle. *Id.* ¶ 15. Defendant Carley and Earl Boehl, the Assistant Director of Property Operations, went to the plaintiff's vehicle and observed "DAP brand caulking" in his truck. *Id.* ¶ 16. Defendants Carley and Boehl then went back to where the caulking was kept in the hotel and "found a box of caulking that had been ripped open, and four tubes of caulking were missing." *Id.* ¶ 17. Additional supervisory personnel were advised of the investigation concerning the missing property and they also went to the plaintiff's vehicle and "saw additional material that appeared to be Hotel property in [p]laintiff's truck." *Id.* ¶¶ 18–19. The "[p]laintiff was [then told] to come to his truck and [when he arrived he] was asked to open the vehicle.... [When he did so, l]awn sprinkler heads, caulking and PVC tubing were all found in [p]laintiff's truck.... Plaintiff's vehicle had four tubes of caulking in it, the same number missing from Hotel stock and the same brand and lot numbers...." *Id.* ¶ 20 (citation to record omitted).

The plaintiff explained that the caulking was his, *id.* ¶ 21, and that he "temporarily stored sprinkler heads and P.V.C. piping in [his truck in] order to perform his maintenance duties at the ... Hotel in an efficient manner[,]" Plaintiff's Amended Material Facts in Dispute ("Pl.'s Facts") ¶ 9. The defendants, however, take the position that "putting the sprinkler heads in his truck ... violated Hotel policy." Defs.' Facts ¶ 25. "While still at his vehicle, ... [the plaintiff was informed] that his employment was being suspended pending further investigation." *Id.* ¶ 26. Defendant Carley, who "had the authority to hire and fire Plaintiff[,]" and Robin Sterrett, the Director of Human Resources, subsequently decided to terminate the plaintiff's employment. *Id.* ¶ 27. On April 9, 2001, the plaintiff filed a complaint in the Superior Court of the District of Columbia, and the case was removed to this Court on May 7, 2001, by the defendants.

**II.** *Standard of Review: Rule 56*

Summary judgment is generally appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a summary judgment motion, the Supreme Court has explained that a trial court must look to the substantive law of the claims at issue to determine whether a fact is "material", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And a "genuine issue" of fact is "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Sanders v. Veneman*, 211 F.Supp.2d 10, 14 (D.D.C.2002) (citing *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

While it is generally understood that when considering a motion for summary judgment a court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," *Greene v. Amritsar Auto Servs. Co.,* 206 F.Supp.2d 4, 7 (D.D.C.2002) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505), the non-moving party must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position", *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. To prevail on a summary judgment motion, the moving party must demonstrate that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The District of Columbia Circuit has stated that the non-moving party may not rely solely on mere conclusory allegations. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Thus, "[i]f the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### III. *Legal Analysis*

### (A) *Are the Plaintiff's State–Law Claims Preempted by the LMRA?*

The defendants' primary position in their summary judgment motion is that resolution of the plaintiff's claims requires the interpretation of the CBA, which con-

tains a mandatory requirement that grievances be resolved through arbitration.[1] Defs.' Mot., Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") at 6. And, because the plaintiff failed to file a grievance and then pursue arbitration if the grievance was not resolved to his satisfaction, the defendants assert that his claims must be dismissed. *Id.* at 10–11.

Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that § 301 "not only provides federal-court jurisdiction over controversies involving collective-bargaining agreements, but also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (quoting *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). Of particular significance to this case, the Supreme Court also stated in *Lingle* that

if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the applica-

---

1. The Court notes that the plaintiff has not advanced the argument that the CBA's mandatory grievance and arbitration procedure was not "clear and unmistakable." *See Wright v. Universal Maritime Serv. Corp.,* 525

U.S. 70, 79–81, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (finding that "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" must be "clear and unmistakable").

tion of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

486 U.S. at 405–06, 108 S.Ct. 1877. The *Lingle* Court explained that

§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.

*Id.* at 409–10, 108 S.Ct. 1877.

██ Here, the defendants assert that the plaintiff's wrongful discharge; negligent hiring, supervision and retention; and tortious interference with contract claims each require the Court to interpret the terms of the CBA and therefore the LMRA preempts these state-law claims. The Court will examine each of these claims separately.

### (1) *Wrongful Discharge Claim*

The plaintiff's wrongful discharge claim consists of his contention that the defendants "ordered [him] to perform plumbing work even though it is illegal to do without being a licensed plumber and in violation of the Union contract[,]" Amended Complaint ("Compl.") ¶ 21, and because he refused to perform these services, the defendants purportedly "retaliated against [him]

and reprimanded [him] for allegedly stealing hotel property as a pretext for [his] failure to violate Union policy or otherwise perform work that is in violation of the law[,]" *id.* ¶ 25. In an answer to an interrogatory, the plaintiff explained that

[t]he work on many of the pipe projects that are recorded by the Hilton in which [he] was used required a licensed plumber, who would normally be a union member. However, since the Hilton made [him] perform the work, the Hilton saved money and did not hire another union worker.

Defs.' Mot., Ex. 4, Plaintiff's Supplemental Answers to Interrogatory # 21.

This Court agrees with the defendants that resolution of the plaintiff's wrongful discharge claim will "require an examination of the contract to ascertain what duties were accepted by each of the parties [to the CBA] and the scope of those duties." Defs.' Mem. at 8 (quoting *Int'l Bhd. of Electrical Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 860, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). The defendants assert that "[t]he CBA required that Local 99 members perform all maintenance and repair work, including plumbing, and that the Hotel get Local 99's consent to contract out this work when it was beyond the Local 99 members' abilities." *Id.* Therefore, the defendants opine that because the "resolution of [this] state-law claim depends upon the meaning of a collective-bargaining agreement," § 301 of the LMRA preempts it. *Lingle,* 486 U.S. at 405–06, 108 S.Ct. 1877.

██ The plaintiff asserts that "there is no need to interpret the CBA that [d]efendants wolfishly attempted to serenade into this litigation. It is the handbook of the [d]efendant Hilton that was used as the basis for termination that is at issue." Pl.'s Opp'n at 7. An examination of Hilton's

Team Member Handbook reveals that the plaintiff is unable to assert a claim of wrongful discharge based solely upon a contractual right that is derived from the Handbook itself. In fact, the Handbook explains that "[e]xcept for team members covered by a collective bargaining agreement between Hilton and a labor union, Hilton has the right to terminate employment with or without cause and with or without notice. Union-represented team members are subject to applicable collective bargaining agreements." Defs.' Mot., Ex. 1 at 37. Thus, Hilton team members/employees are either union members covered by a collective bargaining agreement, which the plaintiff acknowledges he is, see Pl.'s Opp'n at 1 ("As a Hilton employee, Plaintiff was a member of Local 99–99A, International Union of Operating Engineers ... and worked pursuant to [a] collective bargaining agreement [ ], which set forth the scope of duties of Union members."), or at-will employees.[2]

2. The plaintiff's primary argument in his opposition to the defendants' summary judgment motion on the wrongful discharge claim is his position that "[a]ssuming arguendo that [p]laintiff was an at-will employee, which he was not, [d]efendant Hilton is still liable for wrongful discharge of [p]laintiff." Pl.'s Opp'n at 6. While the Court is unclear why the plaintiff focuses on making an argument that his wrongful discharge claim satisfies a public policy exception to the at-will doctrine, even if the plaintiff was an at-will employee he would be subject to the well-settled law "in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for not reason at all." Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C.1991) (citations omitted). The District of Columbia Court of Appeals does recognize "an intentional tort for wrongful discharge based upon a 'very narrow' public policy exception to the at-will doctrine...." Fingerhut v. Children's Nat'l Med. Ctr., 738 A.2d 799, 803 (D.C.1999). In Adams, the Court of Appeals "held that the exception applies 'when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation.' " Fingerhut, 738 A.2d at 803 (quoting Adams, 597 A.2d at 34). Several years later, the Court of Appeals in the en banc decision of Carl v. Children's Hosp., 702 A.2d 159 (D.C.1997) (en banc), stated that "the 'very narrow exception' created in Adams should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." Id. (quoting Carl, 702 A.2d at 160). The Fingerhut Court noted that a majority of the Carl Court "left room for additional public policy exceptions to the at-will doctrine ... [by stating that t]his Court should consider seriously only those arguments that reflect a clear mandate of public policy—i.e., those that make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution, that a new exception is needed." Id. (quoting Carl, 702 A.2d at 164). The public policy "requires an outright refusal to violate a specific law, with the employer putting the employee to the choice of breaking the law or losing his job." See Thigpen v. Greenpeace, Inc., 657 A.2d 770, 771 (D.C.1995). Accordingly, the District of Columbia Court of Appeals has recognized only a limited number of public policy exceptions. See, e.g., Fingerhut, 738 A.2d at 803 (exception held applicable to a police officer who was terminated because he recorded and reported a bribe of a government official); Washington v. Guest Servs., Inc., 718 A.2d 1071, 1072, 1074–80 (D.C.1998) (exception held applicable to termination of employee in retaliation for employee's attempts to ensure compliance by a fellow employee with D.C. health a food regulations); Adams, 597 A.2d at 29–30 (D.C. 1991) (exception held applicable to employee who was fired after he refused to drive a truck that did not have an inspection sticker on its windshield, which would have been illegal under municipal regulations). Here, the plaintiff claims that he satisfies this " 'very narrow' public policy exception to the at-will doctrine[,]" Fingerhut, 738 A.2d at 803, because the "[d]efendants wrongfully accused [him] of 'theft,' which is a violation of [a] DC statute as [d]efendants' basis for terminating [p]laintiff's employment." Pl.'s Opp'n at 7. Clearly, the plaintiff's discharge which resulted from his alleged theft of Hilton property does not fall within the scope of the

■ The Court is unable to conclude that the Handbook itself created an express or implied employment contract. In *Futrell v. Department of Labor Federal Credit Union*, 816 A.2d 793 (D.C.2003), the District of Columbia Court of Appeals analyzed an Employees' Handbook to determine whether it created an implied employment contract. In concluding that no such contract had been created, the Court of Appeals relied, in part, on the fact that the handbook stated in boldface print that it " 'does not constitute an expressed or implied employee contract,' and it also provide[d] that '[e]mployees may terminate their employment with the [employer] any time, for any reason, and may be terminated by the [employer] any time, for any reason, with or without notice.' " *Id.* at 806. The *Futrell* Court concluded that "[t]he inclusion of such unambiguous language and the lack of any specific preconditions in the Guidebook that must be met before employment will be terminated supports the conclusion that [the plaintiff's] arguments [are] without merit...." *Id.* Here, the Hilton's Handbook not only contains the at-will employment language, but begins with a section entitled "Purpose of Handbook[,]" which states that "[t]he contents of this Handbook are presented as a matter of information only and are not to be understood or construed as a promise of contract or of permanent employment between the Hotel and its team members." Defs.' Mot., Ex. 1 at 9. As in *Futrell*, this Court finds that the Hilton Handbook did not constitute an express or implied contract.

Accordingly, because the Court finds that the resolution of the plaintiff's wrongful discharge claim will require an examination of the meaning of the CBA, and because Hilton's Handbook does not provide any express or implied contractual

rights to the plaintiff, this claim is preempted by § 301 of the LMRA.

**(2) *Tortious Interference with Contractual Relations Claim***

The plaintiff asserts that defendant Carley tortiously interfered with the plaintiff's contractual relations with defendant Hilton, *see* Compl. ¶¶ 34–37, proclaiming that he

> was hired through the local union 99 through a collective bargaining agreement, with Defendant Hilton, [which is] considered a contract. Defendant Carley knew of Plaintiff's union contract and membership. Defendant Carley misrepresented that Plaintiff had stolen or taken Hotel property without authorization. Plaintiff's employment was terminated as a result of Defendant Carley's intentional conduct causing economic damages to Plaintiff.

Pl.'s Opp'n at 15–16.

■ To establish a prima facie case of intentional interference with contractual relations, the plaintiff must show: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Futrell*, 816 A.2d at 807 (citations omitted). The District of Columbia Court of Appeals looked to the Restatement (Second) of Torts for the definition of what constitutes "intentional procurement of a breach of the contract[,]" which states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other

District of Columbia Court of Appeals' public policy exception to the at-will doctrine.

from the failure of the third person to perform the contract.

*Paul v. Howard University,* 754 A.2d 297, 309 n. 23 (D.C.2000) (quoting Restatement (Second) of Torts § 766 (1979)). Thus, "[t]he threshold inquiry for determining if a cause of action exists is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties." *Int'l Bhd. of Elec. Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 860, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (holding that an interpretation of the collective bargaining agreement's terms was necessary in tortious breach of contract claim). And, in this case, the Court has already found that the CBA is the only source from which the plaintiff derived any express or implied contractual rights. Accordingly, because the Court would have to interpret the terms of the collective bargaining agreement in order to determine whether defendant Carley "interfere[d] with the performance of a contract ... by inducing or otherwise causing [defendant Hilton] not to perform the contract," *Paul,* 754 A.2d at 309 n. 23 (quoting Restatement (Second) of Torts § 766), this claim is likewise preempted by § 301 the LMRA. Finally, the Court notes that preemption by the LMRA cannot be avoided because the plaintiff's tortious interference claim is only against defendant Carley. As the Eighth Circuit concluded in *Hillard v. Dobelman,* 774 F.2d 886 (8th Cir.1985), a case factually similar to the situation here, "a plaintiff cannot avoid federal preemption by naming an individual supervisor, rather than the employer, as defendant in an action arising from the collective-bargaining agreement." *Id.* at 887.

### (3) *Negligent Hiring, Supervision and Retention Claim*

█ The District of Columbia Court of Appeals has stated that "an action for negligent supervision and retention requires proof that the employer breached a duty to plaintiff to use reasonable care in the supervision or retention of an employee which proximately caused harm to plaintiff." [3] *Phelan v. City of Mount Rainier,* 805 A.2d 930, 940 (D.C.2002) (citations omitted). "To invoke this theory of liability it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown v. Argenbright Security, Inc.,* 782 A.2d 752, 760 (D.C.2001) (citation omitted). The District of Columbia Court of Appeals relied on the Restatement (Second) of Torts for its definition of "negligent supervision[,]" which states:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders or in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk or harm to others;

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

---

**3.** Both parties cite to District of Columbia law as the law that governs the plaintiff's negligent hiring, supervision, and retention claim. Furthermore, it is undisputed that the events that are the predicate for this claim occurred at the Hilton Washington & Towers, which is located in the District of Columbia. The Court will therefore apply District of Columbia law.

*Id.* at 760 n. 10 (quoting Restatement (Second) of Agency § 213 (1958)).

While the Court finds that the LMRA does not preempt the plaintiff's negligent hiring, supervision and retention claim because the Court will not have to interpret the terms of the collective bargaining agreement when analyzing this claim, the Court nonetheless must grant the defendants summary judgment on this claim. The plaintiff's complaint alleges that:

> Defendant Hilton knew or should have known, that Carley would make employment decisions of employees and be likely to confront and be in contact with employees without investigating the qualifications, background or basis of the employment decision of its agents or employees. Defendant Hilton ignored the fact its agent Carley was not competent or qualified; nor was Carley's background investigated to ascertain his fitness to make employment decisions or perform supervisory tasks at a hotel. Plaintiff was an employee of Hilton and would foreseeably come into contact with Carley, therefore, Defendant Hilton owed such a duty to Plaintiff and such duty was breached. Because of Carley's incompetence, unknown background, lack of experience or qualification to make employment decisions or to perform supervisory duties at a hotel, the likelihood of the risk of his harming a fellow employee was foreseeable. Defendant Hilton knew, or should have known that Carley was not competent or fit for the duties as a supervisor and failed to supervise Carley's employment decisions because of the lack of evidence, inadequate investigations or witnesses. Defendant Hilton breached its duty to

use reasonable care to select a supervisor that was competent and fit for the position.

Amend. Compl. ¶¶ 30–31. And, the plaintiff asserts that he was terminated as a result of "[d]efendant Hilton's negligence in hiring, supervising, and retaining Carley in the position as a supervisor...." *Id.* ¶ 32. The crux of the plaintiff's claim appears to be that "[d]efendant [Hilton] knew or should have known that Carley was unfit when he presented unverified facts that Hotel property was stolen by [p]laintiff, which was denied by [p]laintiff, thus presenting a dispute of facts necessitating the Hilton to perform an adequate investigation." Pl.'s Opp'n at 9.

As this Court stated above, the plaintiff must be able to demonstrate that the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown v. Argenbright Security, Inc.*, 782 A.2d 752, 760 (D.C.2001). Thus, the plaintiff must "present some evidence that Hilton had some previous indication that Mr. Carley could not perform an effective investigation." [4] Reply at 9. In *Murphy v. Army Distaff Found., Inc.*, 458 A.2d 61 (D.C.1983), the plaintiff was trespassing on the grounds of a retirement home for wives of deceased army officers, when he was shot six times by one of the gardeners. The plaintiff brought suit against the retirement home claiming that it negligently supervised the gardener. The District of Columbia Court of Appeals found that "[t]o invoke this theory of liability, [the plaintiff] must establish that [the defendant] knew or should have known that its employee regularly

---

4. In fact, the defendants state that "[w]hile Jay Carley was employed at Hilton, the Hotel never received any complaints about his work performance, and he performed his job duties satisfactorily." Defs.' Facts ¶ 14.

ejected trespassers while armed, and that the employer failed to take reasonable precautionary measures in supervising him." *Id.* at 63. In *Phelan*, the wife of an individual killed by an off-duty City of Mount Rainier police officer, brought suit against the City for negligent supervision and retention. 805 A.2d at 932–33. The plaintiff asserted that the police officer had "filed false reports and caused dissension among fellow officers and staff[,]" and she obtained an expert witness who opined that the "City's failure to discipline [the officer] led him to believe that his actions were acceptable." *Id.* at 940. However, the *Phelan* Court found that

> [e]ven assuming . . . that these alleged acts of misconduct provided adequate grounds for the City to discipline or even terminate [the officer], they are insufficient to establish a duty on the part of the City running to [the plaintiff's] decedent or a causal nexus between the failure to discipline and [the officer's] non-duty related confrontation and shooting of the decedent in a jurisdiction where he was an ordinary citizen . . . While the issue of proximate cause is usually for the jury, that is not the case where, as here, there are no facts or circumstances from which a jury can reasonably find that any negligent retention and supervision of [the officer] by the City proximately caused the injury and death of [the plaintiff's husband].

*Id.* Here, the plaintiff has failed to offer any evidence that defendant Hilton knew or should have known that Carley conducted unreasonable investigations in the past. All the plaintiff has done is proffer conclusory allegations on the subject, which are insufficient to defeat a summary judgment motion. *See Greene,* 164 F.3d

at 675 (stating that a non-moving party may not rely solely on mere conclusory allegations to defeat a summary judgment motion). Therefore, because the plaintiff has failed to present any evidence that Hilton knew or should have known that Carley "behaved in a dangerous or otherwise incompetent manner" and that with this knowledge Hilton either failed to supervise Carley adequately or retained him as a supervisor, the Court must also grant the defendants summary judgment on this claim.[5]

**(B)** *Did the Plaintiff Exhaust his Contractual Remedies?*

 It is well understood that

> [a]n employee seeking a remedy for an alleged breach of a collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the [LMRA].

*Clayton v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.,* 451 U.S. 679, 681, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (citations omitted); *see LeBoutillier v. Air Line Pilots Ass'n Int'l,* 778 F.2d 883, 884–85 (D.C.Cir.1985). As this Court noted above, the defendants assert that because the plaintiff failed to exhaust the mandatory grievance and arbitration procedure contained in the CBA, his claims that are preempted by the LMRA must be dismissed. Defs.' Mem. at 10 12. Interestingly, the plaintiff does not even respond to the defendants' exhaustion argument and therefore apparently concedes that he did not exhaust his remedies

---

**5.** To the extent that plaintiff is advancing a negligent hiring claim, the Court will grant summary judgment to the defendants on this claim, as the plaintiff has not provided any evidence supporting such a claim either.

provided by the CBA. This Court's Local Rule 7.1(b) states:

> Within 11 days of the date of service or at such other time as the court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

Rules of the United States District Court for the District of Columbia, LCvR 7.1(b). It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded. *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C.Cir.1997); *Stephenson v. Cox*, Civil Action No. 00–1921, 2002 WL 31106569, at *2 (D.D.C. Sept.23, 2002). The District of Columbia Circuit has stated that "the discretion to enforce ... [R]ule [7.1(b) ] lies wholly with the district court", *Bender,*

127 F.3d at 67–68 (citing *Twelve John Does v. District of Columbia,* 117 F.3d 571, 577 (D.C.Cir.1997)), and noted that the Circuit "ha[s] yet to find that a district court's enforcement of this rule constituted an abuse of discretion", *id.* (citations omitted). Accordingly, the Court will grant the defendants summary judgment, *see LeBoutillier,* 778 F.2d at 884–85 (affirming district court's grant of summary judgment for plaintiff's "failure to invoke contractual mechanism for dispute resolution"); *Vera v. Saks & Co.,* 335 F.3d 109 (2d Cir.2003) (affirming district court's grant of summary judgment upon finding that plaintiff's claims were arbitrable under § 301 and plaintiff failed to exhaust mandatory grievance and arbitration procedures), on the plaintiff's claims that are preempted by the LMRA because the Court construes his failure to address the defendants' assertion that he failed to exhaust the mandatory grievance and arbitration procedures contained in the CBA as a concession that he failed to do so.[6]

---

**6.** In his deposition, the plaintiff states that he filed an oral grievance with the Union's shop steward at the personnel office, but found out the next day that the Union did not want to get involved. Defs.' Mot., Ex. 2 at 124. While the plaintiff does not allege in his oppositions to the defendants' summary judgment motion that these alleged events amounted to the exhaustion of the plaintiff's contractual remedies, even if he had taken this position, the Court would still find that his claims preempted by the LMRA would still be subject to summary judgment. In *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court noted that "[o]rdinarily ... an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement" *Id.* at 163, 103 S.Ct. 2281. However, the *DelCostello* Court stated that

> this rule works an unacceptable injustice when the union representing the employee

in the grievance/ arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. Such a suit, as a formal matter, comprises two cause of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, ... [employee–plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but

### (C) *The Imposition of Sanctions on Plaintiff's Counsel*

▮ On April 9, 2001, the plaintiff filed a complaint in the Superior Court of the District of Columbia, which was removed to this Court by the defendants on May 7, 2001. The Scheduling Order that was issued in this case by another member of this Court to whom this case was originally assigned, required that all discovery be completed by November 15, 2001. On October 26, 2001, the defendants filed a motion to compel the plaintiff to respond to their discovery requests. The plaintiff, in turn, filed both an opposition to the defendants' motion and a motion to extend the discovery period. The matter then came before this Court on December 3, 2001, when it issued an Order granting the defendants' motion to compel discovery responses and granted the plaintiff until December 21, 2001, to provide the discovery responses, when discovery was also ordered closed. *See* Dec. 3, 2001 Order.

On November 15, 2002, which was approximately eight months after the briefing schedule on defendants' motion for summary judgment had closed and eleven months following the close of discovery, the plaintiff filed both a motion for sanctions and an amended opposition to the defendants' summary judgment motion.[7] On December 19, 2002, this Court conducted a hearing to address the plaintiff's motions. At the conclusion of this hearing, the Court granted the plaintiff's request to amend his opposition to the defendants' summary judgment motion, but denied his motion for sanctions and imposed sanctions on plaintiff's counsel for filing such a motion.

The plaintiff had sought the imposition of sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2) due to purported discovery abuses by the defendants, in-

---

the case he must prove is the same whether he sues one, the other, or both. The suit is ... a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].

*Id.* at 163–65, 103 S.Ct. 2281 (internal quotation marks and citations omitted). However, because the applicable statute of limitations period for these "hybrid" section 301 claims is six months, the plaintiff would have been barred from bringing such a claim, as he filed his complaint nearly two years after he spoke to the Union's show steward. *Id.* at 169, 103 S.Ct. 2281 (stating that to establish federal statute of limitation for a hybrid section 301 claim, the Court would "refer to § 10(b) of the National Labor Relations Act, which establishes a six-month period for making charges of unfair labor practices to the NLRB."); *see Daigle v. Gulf State Util. Co., Local Union Number 2286,* 794 F.2d 974, 978 (5th Cir.1986) (noting that because plaintiff's hybrid § 301/fair representation claim against the Union was barred by the six-month statute of limitations, the plaintiff's § 301 suit against the employer could not hinge on this same claim).

7. On November 27, 2002, the defendants filed a motion to strike the amended opposition to defendants' summary judgment motion, noting that plaintiff's filing amounted to a surreply, which the local rules of this Court do not authorize. On December 9, 2002, the plaintiff filed a motion for leave of court to amend his opposition. At the hearing on this motion, plaintiff's counsel asserted that the filing of this amended opposition was proper because "leave shall be freely given when justice requires[ ]" if a party moves for leave to amend a pleading pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff's Motion for Leave to Amend Opposition to Defendants Hilton Hotels Corporation and Jay Carley's Motion for Summary Judgment and Opposition to Defendants Motion to Strike Plaintiff'[ ]s Amended Opposition to Defendants Summary Judgment, Memorandum of Points and Authorities at 1. However, as this Court pointed out at the hearing on December 19, 2002, Rule 15(a) applies to the amendment of "pleadings", which are specifically defined by Federal Rule of Civil Procedure 7(a) and this definition does not apply to summary judgment motions or oppositions thereto.

cluding the alleged failure to respond to information requested in interrogatories and requests for production of documents. During the hearing on the motion and in their opposition to the plaintiff's motion, the defendants asserted that the plaintiff's motion not only violated the Federal Rules of Civil Procedure and the Court's local rules, but was merely an attempt to attain additional discovery following the close of discovery that had occurred eleven months earlier. The Court imposed monetary sanctions on plaintiff's counsel for filing this motion for the following reasons.

 First, it was readily apparent that the plaintiff was unable to seek sanctions against the defendants pursuant to Rule 37(b)(2) because the rule only provides a remedy to a party in circumstances when the opposing party fails to comply with a court order to provide discovery. Thus, since the Court had not issued an order to redress a discovery violation committed by the defendants, the plaintiff's counsel could not seek any relief under this rule. Second, it is undisputed that plaintiff's counsel violated this Court's local rule that imposes a duty on counsel to confer with each other on nondispositive motions before such motions are filed. Local Rule 7.1(m) provides that

> [b]efore filing any nondispositive motion in a civil action, counsel *shall* discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

Rules of the United States District Court for the District of Columbia, LCvR 7.1(m) (emphasis added). Had plaintiff's counsel conferred with the defendants' counsel prior to filing the Motion for Sanctions, the Court is confident that the plaintiff's counsel would have been advised by defense counsel that there was no legal basis for filing the motion. Finally, the Court noted at the hearing that if the plaintiff's counsel had an objection to the defendants' discovery responses, such objections should have been raised prior to the conclusion of the Court imposed discovery period, and certainly not until eleven months later. Therefore, because plaintiff's counsel filed the Motion for Sanctions without a legal basis for doing so, and because he failed to comply with this Court's local rules, which would have presumably prevented the filing of this clearly frivolous motion and avoided the need for the defendants' counsel to expend the time and effort to respond to it, the Court found that it was appropriate to impose sanctions on plaintiff's counsel so that the defendants can be reimbursed for the costs associated with the preparation and filing of the opposition.

Following issuance of the Court's December 19, 2002 Order for the imposition of sanctions, the defendants submitted a $4,177.50 Bill of Costs declaration to the Court. The Court subsequently issued an Order for the defendants to file an itemized list of costs they were seeking to recover. Before the defendants submitted their itemized list of costs, the plaintiff filed an Opposition to Defendant's Bill of Costs and Fees, which essentially sought reconsideration of the Court's decision to impose sanctions, and asserted that the costs being sought by the defendants were unreasonable.

Although the defendants sought relief pursuant to Federal Rule of Civil Procedure 11, the Court finds it appropriate to impose sanctions on plaintiff's counsel pursuant to Federal Rule of Civil Procedure

37(a)(4)(B). This is because Rule 11 is not applicable to "disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37." Fed.R.Civ.P. 11(d). It is undisputed that plaintiff's counsel's motion was made pursuant to Rule 37. While plaintiff's counsel filed his motion for sanctions regarding the defendants' purported discovery violations pursuant to Rule 37(b), the proper mechanism to seek such relief was Rule 37(a), which provides relief to a party when the opposing

> party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling inspection in accordance with the request.

Fed.R.Civ.P. 37(a)(2)(B). And because the Court construes the plaintiff's motion for sanctions as a request under Rule 37(a), the Court finds it appropriate to impose sanctions under Rule 37(a)(4)(B), which states that

> [i]f the motion is denied, the court ... shall, after affording an opportunity to be heard,[ 8] require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

*Id.* In construing the plaintiff's motion as a request made pursuant to Rule 37(a), the Court notes that the purpose underlying the sanctions provision of this Rule, Rule 37(a)(4), is to

> deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

Fed.R.Civ.P. 37(a)(4) advisory committee's note (1970 Amendment). However, the Court's imposition of sanctions pursuant to Rule 37(a)(4)(B) must be reconciled with the District of Columbia Circuit's opinion in *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1172–73 (D.C.Cir.1985). In *Westmoreland,* one of the plaintiffs moved for an award of attorney's fees pursuant to Federal Rules of Civil Procedure 11 and 37(b), and 28 U.S.C. § 1927. The plaintiff argued that if the defendant had properly followed the Federal Rules and sought relief under Rule 37(a), then the plaintiff would have been entitled to attorney's fees under Rule 37(a)(4). However, the District of Columbia Circuit "decline[d] to apply the remedy provisions of Rule 37(a)(4) based on what [the defendant] did *not* do." *Westmoreland,* 770 F.2d at 1173 (emphasis in the original). The *Westmoreland* Court, noting that "Rule 37(a)(4) is not a general attorney's fee awards for violations of the Federal Rules of Civil Procedure[,]" instead concluded that because the motion there "was so groundless ... Rule 11, which applies to discovery motions and reaches both attorney and client participation, is best suited to cover the abuse

---

8. The Court gave plaintiff's counsel an opportunity to address the defendants' request for an award of costs and attorney's fees at the December 19, 2002 hearing. In addition, the Court notes that following the December 19 hearing, plaintiff's counsel also submitted a rather lengthy opposition to defendants' bill of costs and fees, restating all of the reasons why sanctions should not be imposed.

alleged here." 770 F.2d at 1173. Despite what the *Westmoreland* Court held, this Court concludes that *Westmoreland* does not now preclude it from imposing sanctions under Rule 37(a) because *Westmoreland* was decided prior to the 1993 amendment to Rule 11, which specifically made sanctions under Rule 11 inapplicable to discovery and the provisions of Rules 26 through 37. In fact, the advisory committee commentary notes to the amendment indicate that "[i]t is appropriate that Rules 26 through 37, which are specifically designed for the discovery process, govern such documents and conduct rather than the more general provisions of Rule 11. Subdivision (d) [of Rule 11 was] added to accomplish this result." Fed.R.Civ.P. 11 advisory committee's note.

The Court is unpersuaded by the plaintiff's counsel's request for reconsideration of the Court's decision to impose sanctions. It is clear that there was absolutely no legal authority for the plaintiff's request for the imposition of sanctions and that plaintiff's counsel's failed to comply with this Court's local rule mandating that he confer with opposing counsel prior to filing the motion for sanctions. As the Court indicated above, compliance with this rule may have avoided the waste of the Court's and defendants' counsels' time occasioned by the filing of the motion. Finally, the Court finds that the itemized list of costs associated with responding to this motion are absolutely reasonable.[9]

## IV. *Conclusion*

For the reasons stated above, the Court will grant the defendants' motion for summary judgment and dismiss this case. This is because the plaintiff's wrongful discharge and tortious interference with contractual relations claims are preempted by § 301 of the LMRA, and the Court concludes that the plaintiff has conceded that he failed to exhaust his remedies pursuant to the CBA by failing to respond to the defendants' position on the matter. In addition, the Court will grant summary judgment to the defendants on the plaintiff's negligent hiring, supervision, and retention claim because the plaintiff has failed to offer any evidence in support of this claim. Finally, a monetary sanction in the amount of $4,177.50 is imposed against plaintiff's counsel for filing the motion to have sanctions imposed against the defendants pursuant to Federal Rule of Civil Procedure 37(b)(2).

SO ORDERED this 22nd day of September, 2003.[10]

## *ORDER*

Upon consideration of defendants' motion for summary judgment and the bill of costs submitted by the defendants in response to the Court's imposition of sanctions on plaintiff's counsel, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

9. The defendants' itemized list of costs include: $15.00 for copying and filing their opposition, $3,150.00 in attorneys' fees incurred to conduct research (14 hours at $225.00 per hour) and $1,012.50 to draft the opposition to plaintiff's counsel's motion (4.5 hours at $225.00 per hour). The Court's reasonableness conclusion is based on the fact that the plaintiff's motion for sanctions consisted of nine pages, which included the memorandum of points and authorities, and

seventy-six pages of exhibits. In addition, the defendants' opposition consisted of ten pages and thirty-two pages of exhibits. And, the plaintiff's reply consisted of six pages, including the memorandum of points and authorities, and twenty-eight pages of exhibits.

10. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

58

ORDERED that the defendants' summary judgment motion is **GRANTED**. It is

**FURTHER ORDERED** that a monetary sanction pursuant to Federal Rule of Civil Procedure 37(b)(2) is imposed against plaintiff's counsel in the amount of $4,177.50 for filing a frivolous discovery motion to compensate the defendants for the costs they had to pay their attorneys to respond to the motion. It is

**FURTHER ORDERED** that the monetary sanction shall be made payable to the defendants' counsel, who shall disperse the said funds into their clients' account, and shall be paid within thirty days from the date of the entry of this Order. It is

**FURTHER ORDERED** that the above-captioned case is **DISMISSED**.